SHORT RECORD
NO. 19-2683
FILED 09/03/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRUCE CARNEIL WEBSTER,              )
                                    )
        Petitioner,                 )
                                    )
    v.                              )        CAUSE NO. 2:12-CV-086-JPH-MJD
                                    )
JEFFREY KRUEGAR, Warden,            )
                                    )
        Respondent.                 )

## <u>NOTICE OF APPEAL</u>

Notice is given that the United States of America, on behalf of Respondent Jeffrey

Kruegar, appeals to the United States Court of Appeals for the Seventh Circuit.   Appeal

is taken pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253(a) and Federal Rules of

Appellate Procedure 3 and 4(a) from the final judgment entered in this case on June 18,

2019.

Respectfully submitted,

JOSH J. MINKLER
UNITED STATES ATTORNEY

By:     *s/ Jay Stevenson Weimer*
        Jay Stevenson Weimer
        Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

This is to certify that on August 30, 2019, a copy of the foregoing **Notice of Appeal** was filed electronically.   Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system: Kirsten E. Schubert, Monica Foster and Steven J. Wells.   I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: Bruce Carneil Webster, Register No. 26177-077, USP Terre Haute, U.S. Penitentiary, P.O. Box 33, Terre Haute, IN 47808.

*s/ Jay Stevenson Weimer*
Jay Stevenson Weimer
Special Assistant United States Attorney
Office of the United States Attorney
10 West Market Street
Indianapolis, IN 46204-3048

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRUCE CARNEIL WEBSTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:12-CV-086-JPH-MJD |
| | ) | |
| JEFFREY KRUEGAR, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## CIRCUIT RULE 3(C) DOCKETING STATEMENT

Respondent Jeffrey Kruegar provides the following statement pursuant to Circuit Rule 3(c):

**A.   The District Court's Subject-Matter Jurisdiction and the Petitioner's Custody Status**

1.      After kidnapping, raping, beating, and burying alive a 16-year-old girl, the petitioner, Bruce Webster, was convicted in the Northern District of Texas, Case No. 4:94-CR-121-Y-1, of kidnapping resulting in death in violation of 18 U.S.C. § 1201(a)(1) (count one), conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(c) (count two), and using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (count six).   *See United States v. Webster*, 162 F.3d 308, 319-20 (5th Cir. 1998).   The verdict as to count one subjected Webster to a maximum sentence of death.   18 U.S.C. § 1201(a)(1).   During a separate sentencing hearing before the same

1

jury, Webster's defense team argued that Webster was mentally retarded[1] and thus could not be sentenced to death pursuant to 18 U.S.C. § 3596(c).   The trial court found that Webster was not mentally retarded and sentenced him to death on the first count of conviction, life imprisonment on the second, and 60 months' imprisonment on the third. *See id*. at 320.   The trial court entered judgment on October 1, 1996.   The Fifth Circuit affirmed the sentence, holding that "[t]he government presented substantial evidence to support the finding [that Webster was not mentally retarded]."   *Id*. at 353.   The Supreme Court denied Webster's petition for certiorari.   *See Webster v. United States*, 528 U.S. 829 (1999).

2.      On September 29, 2000, Webster filed in the Northern District of Texas a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.   *See Webster v. United States*, No. 4:00-CV-1646, 2003 WL 23109787 (N.D. Tex. Sept. 30, 2003).   Again, Webster argued that his death sentence was improper because he was mentally retarded.   Webster also argued that his counsel was ineffective in failing "to investigate and present additional evidence demonstrating mental retardation and the extreme abuse Webster suffered as a child."   *United States v. Webster*, 392 F.3d 787, 793 (5th Cir. 2004).   After an extensive and detailed review of the evidence presented at trial regarding Webster's intellectual functioning, the trial court denied the motion but granted a certificate of appealability as to two of Webster's claims: "first, that the

---

1 In earlier stages of this litigation, attorneys and courts referred to intellectual disability as "mental retardation." The two terms are synonymous, and can be used interchangeably, though the latter has acquired a pejorative connotation and is no longer commonly used.   This statement will use both terms as necessary to preserve the references made by the parties at the time.

evidence presented at trial was insufficient to warrant the district court's finding that Webster is not mentally retarded; and second, that his alleged retardation renders him ineligible for a death sentence." *United States v. Webster*, 421 F.3d 308, 310 (5th Cir. 2005). The Fifth Circuit rejected Webster's arguments, noting that Webster failed to convince "either the district court that he is retarded or, moreover, a majority of the jurors that he is or even may be retarded." *Id*. at 313-14. The Supreme Court again denied Webster's petition for a writ of certiorari. *See Webster v. United States*, 549 U.S. 828 (2009).

3. On October 22, 2009, Webster moved for authorization to file a second or successive Section 2255 motion on the ground that allegedly newly discovered evidence "in the form of government and school records and additional testimony" established that he was mentally retarded, and thus, ineligible for the death penalty. *See In re Webster*, 605 F.3d 256 (5th Cir. 2010). The Fifth Circuit explained that a petitioner cannot bring a successive claim under Section 2255(h)(1) if he does not assert that the newly discovered evidence would negate his guilt. *See id*. at 258-59. Because Webster's newly discovered evidence challenged only his sentence and not the finding of guilt, the court denied Webster's request to file a subsequent Section 2255 motion. *See id.* The Supreme Court denied certiorari for a third time. *See Webster v. United States*, 131 S. Ct. 794 (2010).

4. On April 6, 2012, Webster filed a savings-clause petition for writ of habeas corpus in the Southern District of Indiana under 28 U.S.C. § 2241 and 28 U.S.C.

§ 2255(e).   The district court's subject-matter jurisdiction to resolve Webster's savings-clause petition came from 28 U.S.C. § 1331 because the petition presented a federal question.   *See Prevatte v. Merlak*, 865 F.3d 894, 900-01 (7th Cir. 2017).   At the time he filed the petition, Webster was imprisoned at Terre Haute U.S. Penitentiary in the Southern District of Indiana.   Webster sought relief based on the same evidence that formed the basis of his second 28 U.S.C. § 2255 request.   On November 13, 2013, the district court denied Webster's Section 2241 petition based on reasoning similar to that the Fifth Circuit had used to deny his second Section 2255 claim.   *See Webster v. Lockett*, No. 2:12-CV-86, 2013 WL 6007593 (S.D. Ind. Nov. 13, 2013).

5.   Webster appealed, and the panel affirmed on August 1, 2014.   *See Webster v. Caraway*, 761 F.3d 764 (7th Cir. 2014).   The Seventh Circuit voted to rehear the case en banc, however, and on May 1, 2015, the en banc court held that there is no absolute bar to the use of the safety valve found in Section 2255(e) for new evidence that would demonstrate categorical ineligibility for the death penalty.   *See Webster v. Daniels*, 784 F.3d 1123, 1139-40 (7th Cir. 2015) (en banc).   The Court also held that "[f]urther proceedings are necessary, however, before the district court can reach the merits of his habeas corpus petition. The district court must hold a hearing for the purpose of deciding whether the Social Security records were indeed unavailable to Webster and his counsel at the time of the trial."   *Id*. at 1145.   The Court explained that, if the district court found that the Social Security records were unavailable, it would turn to the merits of the petition, specifically, "is Webster so intellectually disabled that he is categorically

4

ineligible for the death penalty under *Atkins* and *Hall*?"   *Id*. at 1146.

6.   On August 31, 2018, the district court found that the Social Security records identified by Webster were unavailable to him at the time of trial and that "Webster has satisfied the savings clause, and the Court next must turn to the merits of the petition and determine whether Webster is so intellectually disabled that he is categorically ineligible for the death penalty."   *Webster v. Lockett*, No. 2:12-CV-86, 2018 WL 4181706 (S.D. Ind. Aug. 31, 2018).

7.   On June 18, 2019, the court issued an opinion granting Webster's Section 2241 motion on the basis that Webster was intellectually disabled and thus ineligible for the death penalty.   *See Webster v. Lockett*, No. 2:12-CV-86, 2019 WL 2514833 (S.D. Ind. June 18, 2019).   It vacated Webster's death sentence under Section 2241 and stated that "[t]he Attorney General has 120 days from the Entry of Final Judgment to take appropriate action in light of the writ."   *Id*. at *11.

**B.   The Court of Appeals' Jurisdiction**

8.   The original notice-of-appeal deadline was August 19, 2019.   *See* Fed. R. App. P. 4(a)(1)(B).   On August 13, 2019, the United States moved for an extension of time in which to file the notice of appeal.   *See* Fed. R. App. P. 4(a)(5).   The district court granted the motion and extended the notice-of-appeal deadline until September 3, 2019.   The United States timely filed a notice of appeal on August 30, 2019.

9.   The Seventh Circuit has subject-matter jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253(a).

Respectfully submitted,

JOSH J. MINKLER
UNITED STATES ATTORNEY

By:    *s/ Jay Stevenson Weimer*
       Jay Stevenson Weimer
       Special Assistant United States Attorney

## CERTIFICATE OF SERVICE

This is to certify that on August 30, 2019, a copy of the foregoing **Notice of Appeal** was filed electronically.   Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system: Kirsten E. Schubert, Monica Foster and Steven J. Wells.   I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: Bruce Carneil Webster, Register No. 26177-077, USP Terre Haute, U.S. Penitentiary, P.O. Box 33, Terre Haute, IN 47808.

*s/ Jay Stevenson Weimer*
Jay Stevenson Weimer
Special Assistant United States Attorney
Office of the United States Attorney
10 West Market Street
Indianapolis, IN 46204-3048

6

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| BRUCE CARNEIL WEBSTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | Cause No. 2:12-cv-86-WTL-MJD |
| | ) | |
| CHARLES LOCKETT, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY ON INTELLECTUAL DISABILITY**

This cause is before the Court to determine whether Bruce Webster is entitled to relief under 28 U.S.C. § 2241. For the Court to grant the relief that Webster seeks, Webster must show by a preponderance of the evidence that he is intellectually disabled[1] and thus categorically ineligible for the death penalty. The parties have fully briefed the relevant issues and presented evidence at a hearing. The Court, being duly advised, finds that Webster has satisfied his burden of proving his intellectual disability by a preponderance of the evidence and is thus ineligible for the death penalty.

## I.   BACKGROUND

On November 4, 1994, Bruce Webster was indicted in the United States District Court for the Northern District of Texas on six counts, including kidnapping in which a death occurred in violation of 18 U.S.C. §§ 1201(a)(1) and (2). Webster was convicted and was sentenced to death on June 20, 1996. *United States v. Webster*, 162 F.3d 308 (5th Cir. 1998).

---

[1]Unless quoting or referring to a diagnosis, the Court will use the term "intellectual disability" rather than the term that was used at the time of Webster's trial—"mental retardation." *See Hall v. Florida*, 572 U.S. 701, 704 (2014).

Webster filed his initial Motion to Vacate Conviction and Sentence under

28 U.S.C. § 2255 on September 29, 2000. This motion was subsequently amended and was

denied in full on September 20, 2003. *Webster v. United States*, No. 4:00-CV-1646, 2003 WL

23109787 (N.D. Tex. Sept. 30, 2003). The Fifth Circuit rejected Webster's motion for relief

under section 2255, *United States v. Webster*, 421 F.3d 308 (5th Cir. 2005), and his application

for an order authorizing a successive § 2255 proceeding, *In re Webster*, 605 F.3d 256 (5th Cir.

2010).

On April 6, 2012, Webster filed a Petition for Writ of Habeas Corpus Pursuant to

28 U.S.C. § 2241 in this Court,[2] challenging his death sentence based on what he argued was

previously unavailable evidence—specifically, evidence from Social Security records—that

establishes he is intellectually disabled and therefore ineligible for the death penalty under *Atkins*

*v. Virginia*, 536 U.S. 304 (2002) and *Hall v. Florida*, 572 U.S. 701 (2014). On November 13,

2013, this Court issued an order denying that petition. The Seventh Circuit affirmed this Court's

ruling on August 1, 2014. *Webster v. Caraway*, 761 F.3d 764 (7th Cir. 2014).  However, en banc

review was granted, and the en banc court reversed this Court's decision and remanded for

further proceedings. *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015) (en banc). This Court

held a hearing in June 2018 pursuant to the Seventh's Circuit directive and found that the Social

Security records at issue were unavailable to Webster and his counsel at the time of trial despite

trial counsel's due diligence.

The Seventh Circuit provided the following summary of the Social Security records'

contents:

---

[2]Webster is incarcerated at the United States Penitentiary, Terre Haute, which is located
within the Southern District of Indiana.

2

The newly produced records, which Webster's current lawyers received on February 9, 2009, showed that Webster applied for Social Security benefits based on a sinus condition when he was 20 years old, approximately a year before the crime. The agency's attention was evidently quickly redirected to Webster's mental capacity. Two psychologists and one physician examined him. On December 22, 1993, Dr. Charles Spellman, a psychologist, evaluated him for the purpose of ascertaining his eligibility for Social Security benefits. He noted that "[i]deation was sparse and this appeared to be more of a function of his lower cognitive ability than of any mental illness." Dr. Spellman also observed that Webster's intellectual functioning was quite limited: he could not register three objects (meaning that he could not remember three objects a short time after they were shown to him); he could not do simple calculations; and he did not know what common sayings meant. With respect to adaptive functioning, Dr. Spellman stated that Webster lived with his mother; that he watched television, listened to the radio, and went walking; that he did no chores around the house; and that he was idle both in the house and on the streets. Taking into account both his estimate that Webster's I.Q. was 69 or lower and his assessment of adaptive functioning, Dr. Spellman concluded that Webster was mentally retarded and antisocial. He found no evidence of exaggeration or malingering.

A few months earlier, in October 1993, Dr. Edward Hackett conducted a full-scale WAIS I.Q. test on Webster. He came up with a verbal I.Q. of 71, a performance I.Q. of 49, and a full-scale I.Q. of 59. He evaluated Webster as "mildly retarded, but . . . also antisocial." Pertinent to the central question of adaptive functioning, Dr. Hackett noted in a later report that "[Webster] was viewed as a somewhat mild[ly] retarded con man, but very street wise. . . . [H]e could not be functional in a community setting. . . . He would also not function well in the work place." Dr. Hackett did not believe that Webster was capable of managing his own benefits. He found Webster's behavior somewhat bizarre. Finally, he commented that on the I.Q. tests, Webster's performance was estimated to be lower than his verbal score, and that some organic function might be involved.

The last professional to examine Webster in conjunction with the 1993 Social Security application was Dr. C.M. Rittelmeyer, a physician. Dr. Rittelmeyer found Webster's physical health to be fine, but he also had this to say: "Mental retardation. Flat feet. Chronic sinus problems and allergies by history."

The Social Security records included an intriguing letter that strongly suggested that Webster in fact had been in special education classes. It was dated November 8, 1993, and had been written by Lou Jackson, the Special Education Supervisor for the school system Webster had attended, Watson Chapel Schools. Jackson's letter explained that Webster's special education records had been destroyed in 1988, after the family did not respond to a letter "telling them they could have the records if they wanted them."

3

> The Social Security records also provide some direct evidence about Webster's abilities. The form Webster completed, for example, is rife with errors in syntax, spelling, punctuation, grammar, and thought. In response to a question asking him to describe his pain or other symptoms, Webster wrote "it causEs mE to gEt up sEt Easily hEadhurtsdiffiErnt of brEdth." When asked about the side effects of his medication, he wrote "Is lEEp bEttEr." When asked about his usual daily activities, Webster wrote (consistently with the comments from his teacher and employer) "I slEEps look at. cartoon." He reported that he "ain't got no chang" in his condition since its onset.

*Webster*, 784 F.3d at 1133-34.

The undersigned held a five-day hearing in April 2019 on the issue of whether Webster is intellectually disabled and thus constitutionally ineligible for the death penalty. The Court heard live testimony from the following witnesses: Dr. Mark Tassé; Dr. Daniel J. Reschly; Dr. John Fabian; Dr. Robert Denney; Dr. Erin Conner; John S. Edwards, III; and Phil Woolston. The Court also received the deposition testimony of Dr. Charles Spellman (video and transcript); Dr. Jacqueline Blessinger (transcript); and Larry Moore (video and transcript). Each party also introduced numerous exhibits.[3]

## II.   DIAGNOSTIC CRITERIA FOR INTELLECTUAL DISABILITY

In determining whether Webster is intellectually disabled, the Court will rely on the clinical definitions of intellectual disability promulgated by the American Association on Intellectual and Developmental Disabilities ("AAIDD") and the American Psychiatric Association ("APA") manuals: (1) AAIDD, Intellectual Disability: Definition, Classification, and Systems of Supports (11th ed. 2010) ("AAIDD-11"); and (2) APA, Diagnostic and

---

[3]Over Webster's objection, the Court also has considered the trial transcripts and evidence admitted during the trial that were introduced as exhibits at the hearing, including the Southeast Arkansas Economic Development Records and Arkansas State Police Driving Records.

Statistical Manual of Mental Disorders (5th ed. 2013) ("DSM-5"). *See Moore v. Texas*, 137 S.

Ct. 1039, 1045 (2017) (relying on AAIDD-11 and DSM-5).

> As the Supreme Court has explained,
>
> the generally accepted, uncontroversial intellectual-disability diagnostic definition . . . identifies three core elements: (1) intellectual-functioning deficits (indicated by an IQ score approximately two standard deviations below the mean— i.e., a score of roughly 70—adjusted for the standard error of measurement); (2) adaptive deficits (the inability to learn basic skills and adjust behavior to changing circumstances); and (3) the onset of these deficits while still a minor.

*Moore*, 137 S. Ct. at 1045. Each of these three prongs must be met for a person to be

intellectually disabled.[4]

The APA defines intellectual disability as "a disorder with onset during the

developmental period that includes both intellectual and adaptive functioning deficits in

conceptual, social, and practical domains." DSM-5 at 33. The following three criteria must be

met before an individual may receive a diagnosis of intellectual disability:

> A. Deficits in intellectual functions, such as reasoning, problem solving, planning, abstract thinking, judgment, academic learning, and learning from experience, confirmed by both clinical assessment and individualized, standardized intelligence testing.
>
> B. Deficits in adaptive functioning that result in failure to meet developmental and sociocultural standards for personal independence and social responsibility. Without ongoing support, the adaptive deficits limit functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work, and community.
>
> C. Onset of intellectual and adaptive deficits during the developmental period.

*Id.*

---

[4]The Government does not argue—and there is no suggestion in the record—that if Webster is intellectually disabled that condition did not arise prior to age 18.

5

The AAIDD provides a similar explanation, stating that intellectual disability is "characterized by significant limitations both in intellectual functioning and in adaptive behavior as expressed in conceptual, social, and practical adaptive skills. This disability originates before age 18." AAIDD-11 at 6. Deficits in intellectual functioning are established by "an IQ score that is approximately two standard deviations below the mean, considering the standard error of measurement for the specific assessment instruments used and the instruments' strengths and limitations." *Id.* at 27. Deficits in adaptive functioning are measured by:

> performance on a standardized measure of adaptive behavior that is normed on the general population including people with and without [intellectual disability] that is approximately two standard deviations below the mean of either (a) one of the following three types of adaptive behavior: conceptual, social, and practical or (b) an overall score on a standardized measure of conceptual, social, and practical skills.

*Id.*

### A. Intellectual Functioning

The first prong requires an assessment of an individual's intellectual functions that "involve reasoning, problem solving, planning, abstract thinking, judgment, learning from instruction and experience, and practical understanding." DSM-5 at 37. Intellectual functioning is typically measured by intelligence quotient (IQ) tests. *Id.* The APA describes this prong, in relevant part, as follows:

> Intellectual functioning is typically measured with individually administered and psychometrically valid, comprehensive, culturally appropriate, psychometrically sound tests of intelligence. Individuals with intellectual disability have scores of approximately two standard deviations or more below the population mean, including a margin for measurement error (generally +5 points). On tests with a standard deviation of 15 and a mean of 100, this involves a score of 65–75 ($70 \pm 5$). Clinical training and judgment are required to interpret test results and assess intellectual performance.

DSM-5 at 37. The AAIDD Manual provides:

6

> The "significant limitations in intellectual functioning" criterion for a diagnosis of intellectual disability is an IQ score that is approximately two standard deviations below the mean, considering the standard error of measurement for the specific instruments used and the instruments' strengths and limitations.

AAIDD-11 at 31.

### B. Adaptive Functioning

The second prong involves an assessment of an individual's adaptive functioning to determine whether "adaptive deficits limit functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work, and community." DSM-5 at 33. The APA indicates that adaptive functioning involves adaptive reasoning in three broad domains:

> The *conceptual (academic) domain* involves competence in memory, language, reading, writing, math reasoning, acquisition of practical knowledge, problem solving, and judgment in novel situations, among others. The *social domain* involves awareness of others' thoughts, feelings, and experiences; empathy; interpersonal communication skills; friendship abilities; and social judgment, among others. The *practical domain* involves learning and self-management across life settings, including personal care, job responsibilities, money management, recreation, self-management of behavior, and school and work task organization, among others.

DSM-5 at 37-38.

A person's adaptive functioning in at least one of these three domains must be "sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school, at work, at home, or in the community." *Id.* at 38; *Moore*, 137 S. Ct. at 1046 ("In determining the significance of adaptive deficits, clinicians look to whether an individual's adaptive performance falls two or more standard deviations below the mean in any of the three adaptive skill sets (conceptual, social, and practical)."). The AAIDD defines the second prong as "significant limitations . . . in conceptual, social, and

practical skills." AAIDD-11 at 43. Further, "the deficits in adaptive functioning must be directly related to the intellectual impairments described in [the first prong]." DSM-5 at 38.

Both the DSM-5 and the AAIDD-11 direct clinicians to use standardized measures of adaptive functioning when possible. *See* DSM-5 at 37 ("Adaptive functioning is assessed using both clinical evaluation and individualized, culturally appropriate, psychometrically sound measures."); AAIDD-11 at 43 ("[S]ignificant limitations in adaptive behavior should be established through the use of standardized measures normed on the general population . . . .").

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court will address Webster's intellectual functioning and adaptive functioning in turn.

### A.   Webster's Intellectual Functioning

The Court finds that Webster has proved by a preponderance of the evidence that he has significant limitations in intellectual functioning and thus satisfies the first prong of the intellectual disability definition. He has produced reliable evidence that he has an IQ at least two standard deviations below the mean.[5]

Webster has produced the following IQ test scores:

| Psychologist | Year | Score |
|---|---|---|
| Dr. Patrick Caffey (Arkansas Department of Mental Health) | 1992 | 48 (Full scale) 56 (Verbal) 48 (Performance) |
| Dr. Edward Hackett (Social Security Administration) | 1993 | 59 (Full scale) 71 (Verbal) 49 (Performance) |
| Dr. Raymond Finn (Defense trial expert) | 1995 | 59 (Full scale) 59 (Verbal) |

---

[5]"Although far from perfect, intellectual functioning is currently best represented by IQ scores when they are obtained from appropriate, standardized and individually administered assessment instruments." AAIDD-11 at 31.

| | | 60 (Performance) |
|---|---|---|
| Dr. Dennis Keyes (Defense trial expert) | 1995 | 55 (Composite) 67 (Crystalized) 46 (Fluid) |
| Dr. Raymond Finn (Defense trial expert) | 1996 | 65 (Full scale) 72 (Verbal) 59 (Performance) |
| Dr. Dennis Keyes (Defense trial expert) | 1996 | 51 (Full scale) N/A (Verbal) N/A (Performance) |
| Dr. George Parker (Government trial expert) | 1996 | 72 (Full scale) 77 (Verbal) 67 (Performance) |
| Dr. Robert Denney (Government expert) | 2018 | 61 (Full scale) 63 (Verbal) 69 (Performance) |
| Dr. Daniel Reschly (Webster expert) | 2018 | 53 (Full scale) N/A (Verbal) N/A (Performance) |

Additionally, as noted above, as part of the Social Security process in 1993, Dr. Spellman estimated that Webster's IQ was 69 or lower, and Dr. Rittelmeyer commented that Webster was mentally retarded.

All of Webster's full-scale IQ tests fall below 75. The parties agree that some of the tests are invalid and should not be considered.[6] Eliminating those scores, the remaining scores are as follows: 59, 59, 65, 51, 55, 61, and 53.[7] Thus, if these scores are valid, they demonstrate that Webster satisfies the intellectual deficit prong of intellectual disability.

---

[6]Specifically, the score obtained in 1992 by Dr. Caffey might have been artificially low because the test was administered while Mr. Webster was experiencing mental health symptoms, including perhaps symptoms of schizophrenia, and in 1996 Dr. Parker improperly omitted certain subtests, which rendered the results he obtained unreliable.

[7]The weight of the evidence supports a finding that Webster was not motivated to underperform on tests conducted prior to his trial. The evidence presented at the trial included only one IQ test that had been performed on Webster before the crime—the 1992 test done at the Southeast Arkansas Mental Health Clinic. Notably, the jury did not hear evidence that was later obtained from Webster's Social Security files: Webster had scored 59 on Dr. Hackett's test; Dr. Spellman had estimated Webster's IQ to be 69 or lower; and Dr. Rittelmeyer commented that Webster was "mentally retarded." In light of the Government's arguments at trial that Webster

9

The scores themselves were obtained over a period of twenty-five years and consistently demonstrate that Webster has an IQ that falls within the range of someone with intellectual deficits. In reaching this conclusion, the Court finds that the evidence does not support a finding of malingering[8] such that the tests are invalid. The Court relies on the testimony of Dr. Fabian, who is board certified in forensic psychology and clinical psychology and fellowship trained in neuropsychology.[9] Specifically, Dr. Fabian explained that the effort testing[10] showed, at most,

---

was motivated to underperform on later tests to avoid the death penalty, this omission is particularly significant.

[8]The APA describes malingering as follows:

The essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs. . . . Malingering should be strongly suspected if any combination of the following is noted:

1. Medicolegal context of presentation (e.g., the individual is referred by an attorney to the clinician for examination, or the individual self-refers while litigation or criminal charges are pending).

2. Marked discrepancy between the individual's claimed stress or disability and the objective findings and observations.

3. Lack of cooperation during the diagnostic evaluation and in complying with the prescribed treatment regimen.

4. The presence of antisocial personality disorder.

DSM-5 at 726-27.

[9]The Court finds the testimony of Dr. Fabian to be extremely credible and persuasive. Of particular note is that Dr. Fabian acknowledged and considered evidence that was contrary to his ultimate conclusion. As he put it, "Certainly, there are strengths and weaknesses in these cases. They're not perfect cases, but you want to look at the case in its totality and come up with your clinical judgment and overall opinion as to your findings as in this case what intellectual disability is or whether that person has it." Dkt. No. 192 at 161. Nonetheless, after applying his clinical judgment to the totality of the evidence and facts, Dr. Fabian concluded that Webster did have a mild intellectual disability.

[10]Effort testing involves stand-alone or embedded questions within another test used to determine whether someone is putting forth adequate effort on a test.

10

that Webster at times had variable effort.[11] He also distinguished malingering from poor effort

and pointed to Webster's "base foundation of complex trauma" and the atypical testing

conditions. Dkt. No. 192 at 145. Dr. Fabian also testified that low IQ creates a risk of false

positives for poor effort on effort tests and that Webster passed most of the Reliable Digit Span

tests and other later effort tests. The Court credits Dr. Fabian's testimony that, considering all of

these factors, Webster was not malingering.[12]

Further, the Court credits the testimony of Dr. Reschly, a school psychologist who is

currently a professor emeritus of Education and Psychology at Vanderbilt University, that it

would be "extremely difficult" to consistently fake IQ scores in that range over the course of

twenty-seven years.[13]  Dkt. No. 189 at 173. The Court also credits the testimony of Dr. Reschly

---

[11]The Government argues that the validity tests indicated that Webster was malingering. Specifically, the Government points to the testimony of Dr. Denney that Webster failed the Word Memory Test ("WMT") and that Webster's results on the Medical Symptom Validity Test ("MSVT") also showed that Webster was malingering. For the reasons explained below, the Court gives Dr. Denney's testimony little weight.

[12]The Government has pointed to contrary evidence, including DSM-5 factors that the Government argues indicate that malingering should be strongly suspected. Specifically, the Government points to the fact that much of Webster's testing occurred in the medicolegal context of presentation. Further, the Government points to evidence that there was a marked discrepancy between Webster's claimed disability and the objective findings and observations. As the Government notes, even some of Webster's own experts were surprised by the test results. The Government acknowledges that it is difficult to evaluate the third factor—lack of cooperation with the diagnostic evaluation and in compliance with the prescribed treatment regimen—but points to Dr. Hackett's observation that Webster showed no signs of wanting to improve. Finally, Webster has been diagnosed with antisocial personality disorder. While the Court gives this evidence some weight, for the reasons explained above, the Court finds that this evidence is outweighed by other evidence that does not support a finding of malingering.

[13]The Court finds the testimony of Dr. Denney, a licensed clinical psychologist who is board certified in clinical neuropsychology and forensic psychology, overall to be not credible and thus gives it little or no weight. As a whole, Dr. Denney focused on evidence that supported his conclusions while ignoring, disregarding, or minimizing evidence that called his conclusions into question.

For example, the Court finds that the testimony of Dr. Denney that malingering on IQ tests is easy is unsupported by the article on which Dr. Denney relied. In fact, the article reached the following conclusion: "The results of this study suggest that faking low on the WAIS-R is a

11

that it would be "extremely unusual" for a person to have the same performance across multiple

subtests; rather, what happens frequently "is that there are fairly wide variations across different

subtests." Dkt. No. 189 at 178.[14] The Court also credits the testimony of Dr. Fabian that

Webster's IQ scores were consistent and indicated mild intellectual disability. Dr. Fabian's own

difficult endeavour." Lorraine Johnstone & David J. Cooke, "Feigned Intellectual Deficits on the Wechsler Adult Intelligence Scale-Revised," 42 *British J. of Clinical Psych.* 303, 314 (2003). When asked about this statement in the article, Dr. Denney replied, "Yes. It says that in that sentence, but that's not what that's talking about at that point." Dkt. No. 192 at 118. He did not elaborate. In any case, the study did not address the ease of repeatedly producing fake low IQ test results over several decades, as the Government argues Webster did.

　　Similarly, Dr. Denney's criticism of Dr. Reschly for allegedly being not properly licensed in Indiana and allegedly practicing outside his training as a school psychologist is not well taken. Dr. Denney himself is not licensed in Indiana, and Dr. Denney acknowledged that he worked with a master's level school psychologist who did testing in a prison setting.

　　More importantly, some of Dr. Denney's testimony is demonstrably incorrect or appears to reveal biases. Specifically, Dr. Denney testified that the results of the Test of Malingering Memory ("TOMM") administered by Dr. Reschly should be considered invalid because Dr. Reschly "didn't give the whole test. He only gave the first two trials. He didn't give the retention trial, which research shows makes it a more sensitive validity test. He didn't do that, but the results of it were within expected limits." Dkt. No. 191 at 208. Dr. Reschly, however, did administer all three trials of the TOMM, including the retention trial, and Webster passed all three trials. Dr. Denney testified that he had access to the raw data from Dr. Reschly's administration of the TOMM—which shows that the retention trial was administered.

　　Also troubling to the Court is Dr. Denney's reliance on an evaluation done on July 8, 1992, in which, according to Dr. Denney, psychiatrists at the Southeast Arkansas Mental Health Center "did not see an indication of a substantially low intellectual functioning in their examination." Dkt. No. 192 at 25. Notably, the report to which Dr. Denney refers does not mention Webster's intellectual functioning, instead focusing on Webster's reports of the voices in his head that were telling him to kill people. It does, however, mention that Webster was in for psychological testing. At the time Dr. Denney formed his opinion on the psychiatric evaluation report, he had not realized that another report, completed by a psychologist examiner and consulting psychologist at the Southwest Arkansas Mental Health Center on the same day, showed that Webster had a full-scale IQ of 48. Even after Dr. Denney reviewed the reports of the psychological evaluation for the first time during the hearing, he refused to consider explanations other than the conclusion he had reached before learning of the psychological evaluation report.

　　[14]The Government points to Dr. Denney's testimony that Webster's test results are inconsistent and mutually contradictory. The Court has considered this testimony but finds that it is outweighed by other evidence discussed above.

12

testing to assess Webster's general reasoning ability was also consistent with the IQ testing that

Drs. Denney and Reschly conducted.

Looking first at the tests that were performed before the crime, the weight of the evidence

supports a finding that Webster was not motivated to underperform on the testing performed as

part of his application for Social Security.[15] In the form Webster filled out, he described his

symptoms as follows:

---

[15]The Government argues that Webster had motive to malinger when he was tested to determine his eligibility for Social Security benefits. In support of that argument, the Government points to the testimony of Dr. Denney: "And, while Webster argues that he only applied for benefits due to sinus problems, his mother told Dr. Denney that she brought Webster to the Social Security Administration because of his sinus problem and concerns that he may have issues with his brain. Hr. Tr. 688:1-9." Dkt. No. 195 at 38.

In fact, Dr. Denney testified as follows:

Q: In 1993, [Webster] applied for Social Security; is that correct?
A: I'm not exact on the date; but yes, he did apply.
Q: Okay. And he applied because he had sinus trouble; is that right?
A: Well, that's what's written on the document. I recalled -- actually, I recalled it last night, that Mrs. Webster told me during her interview that they applied for sinus problems; and she also told me that she was concerned that that might relate to his brain.
Q: That his sinus trouble might relate to his brain?
A: Yes.
Q: That's what Mrs. Webster told you?
A: Yes, it was in the notes.

Dkt. No. 192 at 34-35. As such, the Government's argument mischaracterizes Dr. Denney's testimony.

13

Hrg. Ex. 21 at 63.[16] In additional Social Security documents, Webster also referred to sinus

symptoms as the basis for his disability claim.

Further, Dr. Charles Spellman,[17] a psychologist who conducted a mental status evaluation

of Webster at the request of the Social Security Administration in 1993 and who found that

Webster's total presentation was of someone who was mentally retarded, with an IQ of 69 or

lower, testified that he is "always hyper vigilant for malingering" Dkt. No. 164-1 at 31, yet he

found no evidence of exaggeration or malingering.[18]

With regard to the testing that was performed after the crime and before Webster's trial,

the testimony of Larry Moore, Webster's trial attorney, which the Court finds to be credible,

established that Webster did not know the purpose of the testing that was conducted between the

time of the crime and Webster's trial and that Moore told Webster to do his best because the

---

[16]The Court did not consider Exhibits 42 and 43 in making its ruling, as the Court found other evidence sufficient to make its findings with regard to whether Webster is intellectually disabled.

[17]The Court considered the testimony of Dr. Spellman over Webster's objection.

[18]During Dr. Spellman's deposition, the Government asked Dr. Spellman many hypothetical questions about whether a person who was intellectually disabled could perform certain tasks. The Court gives no weight to his answers to those questions, as the questions did not provide Dr. Spellman with enough details or context to warrant giving his answers weight in making a finding specific to Webster.

14

better Webster did, the more it would help him. Moreover, Moore testified that he purposely

avoided telling Webster that he planned to argue that Webster was mentally retarded until right

before jury selection because he knew that Webster did not like the term and "didn't want to be

stigmatized as being retarded." Dkt. No. 164-2 at 25. Accordingly, the Court finds that Webster

has presented convincing evidence that he was not motivated to malinger on the IQ tests given in

1995 and 1996 and that the results of those tests are valid.

The Court finds that Webster has shown by a preponderance of the evidence that his IQ

scores were valid, and, after considering the evidence as a whole, the Court finds that Webster

has shown by a preponderance of the evidence that he has deficits in intellectual functioning.[19]

### B.    Webster's Adaptive Functioning

The Court finds that Webster also has proved by a preponderance of the evidence that he

has significant limitations in adaptive functioning and thus satisfies the second prong of the

intellectual disability definition.

The Court gives great weight to the testimony of Dr. Fabian that Webster has significant

deficits in adaptive behavior. Dr. Fabian administered a series of tests to Webster and considered

adaptive functioning assessments administered by other psychologists. Dr. Fabian also spent a

great deal of time interviewing Webster and reviewed numerous records, including Webster's

school records and the Social Security records. Additionally, Dr. Fabian's explanation of why he

gave weight to some evidence while giving little weight to other evidence was especially

persuasive. In particular, the Court found Dr. Fabian's explanation of why he gave little weight

---

[19]In reaching its decision, the Court has considered the evidence that could suggest that Webster does not have deficits in intellectual functioning, including Dr. Denney's testimony as to the import of the results of Webster's effort testing, Webster's real-world functioning, and Webster's achievement test scores.

to Webster's adaptive functioning in prison to be very convincing. Dr. Fabian explained that a prison environment is very structured, and everything is available to an inmate.

The Court also credits the testimony of Dr. Reschly that Webster meets the second prong. Dr. Reschly considered a wide variety of information in reaching his decision, and he interviewed many people who knew Webster during the developmental period, including people who are not his direct relatives. Dr. Reschly also considered standardized adaptive behavior assessments, and the Court finds his explanation of why the more recent adaptive behavior assessments should be viewed with caution to be persuasive. Dr. Reschly explained that someone with an intellectual disability does not likely function in the "predictable, very rigid structure" of prison the same way that person would function outside of that environment. Dkt. No. 190 at 43. The Court also credits the testimony of Dr. Reschly that Webster has deficits in the conceptual, social, and practical domains.

In reaching this conclusion, the Court also has looked to the Social Security records that were not available to Webster at the time of his trial. As the Seventh Circuit pointed out, the application materials revealed that Webster was barely literate.[20] For example, for information about his job duties, Webster listed his job title as "Cement" and provided the following description:

---

[20]The Court also found persuasive Dr. Fabian's characterization of Webster's responses to questions in the Social Security records as being concrete and limited, which Dr. Fabian testified was consistent with his interactions with Webster.



I vEa//y did no whatIwas doing.
Ihad he/pE from thE othEr workEr
thatwork wi th mE. I hE/p sprEa d
th E cEmEnt out.

Hrg. Ex. 21 at 66. He listed this same job on four separate pages, although the instructions

indicated that the applicant should provide the information for each job he had listed, and

Webster had listed only one job.

Webster's answers to the section on Recreational Activities and Hobbies also supports

the conclusion that Webster was barely literate:

Recreational Activities and Hobbies

A.  Do you do any reading?  |☑| Yes  |☐| No

If yes, describe what you read:  _Playboy naked_

_books_

How often and how long do you read? _____

_long times_

If no, describe why not: _____

_____

B.  Do you watch television or listen to the radio?  |☑| Yes  |☐| No

If yes, describe what you watch or listen to:  _cartoons._

_BET cinamacks rap musics_ .

How much time do you spend doing this? _____

_lots of times_

If no, describe why not: _____

_____

C.  Do you have any hobbies or pastimes?     |☑| Yes  |☐| No

If yes, describe the things you do:  _radio, tv past_

_my times_

How often do you do these things?  _every day_

How much time do you spend doing these?  _a lots of_

_time_

If no, describe why not: _____

_____

D.  Describe any changes in these activities since your condition began:

_thats my every day thang_

Hrg. Ex. 21 at 19.

18

The Government has pointed to evidence that Webster does exhibit areas of strength, including, but not limited to, his musical ability, excellent hygiene, ability to drive, achievement test scores, and ability to engage in conversation.[21] The Government also has argued that the facts of the crime demonstrate that Webster does not have deficits in adaptive functioning.[22] However, in accordance with guidance from the medical community and as instructed by the Supreme Court, the Court has focused its adaptive-functioning inquiry on adaptive deficits. *See Moore I*, 137 S. Ct. at 1050 (citing AAIDD-11, at 47 ("significant limitations in conceptual, social, or practical adaptive skills [are] not outweighed by the potential strengths in some adaptive skills"); DSM-5, at 33, 38 (inquiry should focus on "[d]eficits in adaptive functioning"; deficits in only one of the three adaptive-skills domains suffice to show adaptive deficits); *see Brumfield* [*v. Cain*, 135 S. Ct. 2269, 2281 (2015)] ("[I]ntellectually disabled persons may have 'strengths in social or physical capabilities, strengths in some adaptive skill areas, or strengths in one aspect of an adaptive skill in which they otherwise show an overall limitation.'" (quoting AAMR, Mental Retardation: Definition, Classification, and Systems of Supports 8 (10th ed. 2002))).

Over Webster's objections, the Court has considered evidence about Webster's behavior, education, work, and mental health in prison, including all of the Bureau of Prisons records[23]

---

[21]For reasons explained above, the Court gives little weight to the testimony of Dr. Denney that Webster does not have significant deficits in the conceptual domain, social domain, or practical domain. The Court has looked at the evidence pointed to by Dr. Denney in support of his conclusion and does not find Dr. Denney's explanation as to the conclusions that he has drawn to be persuasive.

[22]Over Webster's objection, the Court has considered evidence about the facts of the crime and has viewed those facts in the light that most favorably supports the Government's argument.

[23]These records include the emails that the Government argues that Webster has written while incarcerated. The Court has assumed for the purposes of making its findings that Webster did, in fact, write these emails himself.

introduced by the Government and the testimony of Dr. Jacqueline Blessinger; John S. Edwards, III; and Phil Woolston.[24] The Court also considered much of the testimony of Dr. Erin Conner.[25] The Court gives little weight to this evidence, relying on Dr. Fabian's cautions as to the use of such evidence. *See also Moore I*, 137 S. Ct. at 1050 ("Clinicians, however, caution against reliance on adaptive strengths developed 'in a controlled setting,' as a prison surely is. DSM-5, at 38 ('Adaptive functioning may be difficult to assess in a controlled setting (e.g., prisons, detention centers); if possible, corroborative information reflecting functioning outside those settings should be obtained.'); *see* AAIDD-11 User's Guide 20 (counseling against reliance on 'behavior in jail or prison'").). Additionally, the Court would give little weight to the testimony of Drs. Conner and Blessinger even had their interactions with Webster not taken place in a prison setting. Neither the quantity nor depth of their interactions with Webster would lead the Court to find their testimony to be more persuasive than that of Drs. Fabian and Reschly. The Court did consider Edwards' testimony as to his conversations with Webster, observations of Webster's behavior and performance as an orderly, and emails that he received that he believed to be from Webster but finds that this testimony is outweighed by other evidence discussed above.

Weighing the evidence as whole, the Court finds that Webster does have deficits in his adaptive functioning.[26]  Further, the Court finds that the evidence supports a finding that

---

[24]Woolston has only been briefly introduced to Webster. Woolston testified to lay the foundation for the BOP educational records, which the Court has admitted and considered.

[25]The Court finds that Dr. Conner's testimony about inmate Ronell Wilson is not relevant; as such, the Court did not consider that testimony.

[26]While there was some evidence that Webster was not in special education classes in school, the Court finds that the weight of the evidence supports a finding that Webster was, in fact, in special education. In making this finding, the Court has considered, over Webster's objections, the school records introduced by the Government at the hearing.

Webster's deficits are related to intellectual functioning.[27] In making this decision, the Court has considered, over Webster's objection, evidence of Webster's other psychological conditions.[28] Therefore, the Court finds that Webster has shown by a preponderance of the evidence that he has significant deficits in adaptive functioning and as such satisfies the second prong of intellectual disability.

## IV.    CONCLUSION

The Court finds that Webster has met his burden and shown by a preponderance of the evidence that he is intellectually disabled, as he meets all three prongs of intellectual disability: 1) Webster has intellectual-functioning deficits; 2) Webster has adaptive deficits; and 3) the onset of these deficits was while Webster was a minor. In making this ruling, the Court has carefully considered the totality of the evidence and weighed the testimony in accordance with its credibility assessment of each witness.

Accordingly, Webster's petition for a writ of habeas corpus is **GRANTED**. Webster's death sentence is vacated under 28 U.S.C. § 2241. The Attorney General has 120 days from the Entry of Final Judgment to take appropriate action in light of the writ. Further sentencing proceedings shall occur in the Northern District of Texas.

SO ORDERED: 6/18/2019

_William T. Lawrence_
Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[27]Dr. Tassé testified that it is impossible to prove this relationship clinically. See Dkt. No. 189 at 48 ("[W]e wouldn't know whether it's the adaptive behavior deficits that caused the intellectual functioning deficits or the intellectual deficits caused the adaptive behavior deficits."). The Court finds his testimony on this topic to be persuasive.

[28]Specifically, the Government has pointed to Webster's antisocial personality disorder.

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRUCE CARNEIL WEBSTER,              ) | |
|                                     ) | |
|                 **Petitioner,**     ) | |
| **vs.**                             )    **Cause No. 2:12-cv-86-WTL-MJD** |
|                                     ) | |
| CHARLES LOCKETT,                    ) | |
|                                     ) | |
|                 **Respondent.**     ) | |

## JUDGMENT

The Court having this day directed the entry of final judgment, the Court now enters

**FINAL JUDGMENT** in favor of the petitioner, Bruce Webster, and against the respondent.

Webster's petition for a writ of habeas corpus is granted. Webster's death sentence is vacated

under 28 U.S.C. § 2241. The Attorney General has 120 days from the Entry of Final Judgment to

take appropriate action in light of the writ. Further sentencing proceedings shall occur in the

Northern District of Texas.

SO ORDERED: 6/18/2019

Laura A. Briggs, Clerk

BY: _____
     Deputy Clerk, U.S. District Court

Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRUCE CARNEIL WEBSTER,            )
                                  )
              Petitioner,         )
                                  )
        v.                        )        No. 2:12-cv-00086-JPH-MJD
                                  )
CHARLES LOCKETT,                  )
                                  )
              Respondent.         )

**ORDER GRANTING RESPONDENT'S MOTIONS TO EXTEND THE NOTICE-OF-APPEAL DEADLINE**

Respondent moves pursuant to Federal Rule of Appellate Procedure 4(a)(5) to extend the notice-of-appeal deadline from August 19, 2019, to September 3, 2019.  Respondent's motion is timely and sets forth good cause for the extension as required by under Federal Rule of Appellate Procedure 4(a)(5)(A).  Petitioner does not oppose the extension.

For these reasons, Respondent's duplicative motions to extend the notice-of-appeal deadline, dkt. [201], dkt. [202], are **GRANTED**.  The notice-of-appeal deadline is extended **through September 3, 2019**.

**SO ORDERED.**

Date: 8/16/2019

_James Patrick Hanlon_____
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Monica Foster
INDIANA FEDERAL COMMUNITY DEFENDERS
monica_foster@fd.org

Timothy Wayne Funnell
UNITED STATES ATTORNEY'S OFFICE
tim.funnell@usdoj.gov

1

James Wesley Hendrix
UNITED STATES ATTORNEY'S OFFICE
wes.hendrix@usdoj.gov

Kathryn A Johnson
DORSEY & WHITNEY LLP
johnson.kate@dorsey.com

Joseph Andrew Magliolo
U.S. ATTORNEY'S OFFICE
joseph.magliolo@usdoj.gov

Winfield D. Ong
UNITED STATES ATTORNEY'S OFFICE
winfield.ong@usdoj.gov

Tami Coette Parker
UNITED STATES ATTORNEY'S OFFICE
tami.parker@usdoj.gov

Florence Italia Patti
INDIANA FEDERAL COMMUNITY DEFENDERS
italia.patti@fd.org

Kirsten E. Schubert
DORSEY & WHITNEY LLP
schubert.kirsten@dorsey.com

Michael Stephen Warbel
U.S. DEPARTMENT OF JUSTICE
Michael.Warbel@usdoj.gov

Jay Steveson Weimer
U.S. Attorney's Office
jay.weimer@usdoj.gov

Steven J. Wells
DORSEY & WHITNEY LLP
wells.steve@dorsey.com

2

Case 2:12-cv-00086-JPH-MJD   Document 208   Filed 09/03/19   Page 33 of 57 PageID #: 7175
Case: 19-2683        Document: 1-1        Filed: 09/03/2019     Pages: 57

# *** PUBLIC DOCKET ***

APPEAL,HABEAS,MANDATE,CLOSED

## U.S. District Court
### Southern District of Indiana (Terre Haute)
### CIVIL DOCKET FOR CASE #: 2:12-cv-00086-JPH-MJD

| | |
|---|---|
| WEBSTER v. LOCKETT | Date Filed: 04/06/2012 |
| Assigned to: Judge James Patrick Hanlon | Date Terminated: 06/18/2019 |
| Referred to: Magistrate Judge Mark J. Dinsmore | Jury Demand: None |
| Case in other court: 7th Circuit, 14-01049 - Mandate | Nature of Suit: 535 Death Penalty - Habeas Corpus |
| Cause: 28:2241 Petition for Writ of Habeas Corpus (federal) | Jurisdiction: Federal Question |

**Petitioner**

**BRUCE CARNEIL WEBSTER**          represented by   **Florence Italia Patti**
INDIANA FEDERAL COMMUNITY
DEFENDERS
111 Monument Circle
Suite 3200
Indianapolis, IN 46204
317-383-3520
Fax: 317-383-3525
Email: italia.patti@fd.org
*ATTORNEY TO BE NOTICED*

**Kathryn A Johnson**
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
612-492-6768
Fax: (612) 340-2868
Email: johnson.kate@dorsey.com
*ATTORNEY TO BE NOTICED*

**Kirsten E. Schubert**
DORSEY & WHITNEY LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402-1498
612-492-6755
Fax: 612-340-8800
Email: schubert.kirsten@dorsey.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Monica Foster**
INDIANA FEDERAL COMMUNITY
DEFENDERS
111 Monument Circle
Suite 3200
Indianapolis, IN 46204
(317) 383-3520
Fax: (317) 383-3525
Email: monica_foster@fd.org
*ATTORNEY TO BE NOTICED*

**Steven J. Wells**
DORSEY & WHITNEY LLP
50 South Sixth Street
Suite 1500
Minneapolis, MN 55402-1498
612-340-7809
Fax: 612-340-2868
Email: wells.steve@dorsey.com
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**CHARLES LOCKETT**                 represented by   **James Wesley Hendrix**
*Warden, United States Penitentiary,*                UNITED STATES ATTORNEY'S
*Terre Haute (USP)*                                  OFFICE (Northern District of T
                                                     1100 Commerce Street
                                                     Suite 300
                                                     Dallas, TX 75242
                                                     214-659-8684
                                                     Email: wes.hendrix@usdoj.gov
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Jay Steveson Weimer**
                                                     U.S. Attorney's Office
                                                     801 Cherry Street
                                                     Unit 4
                                                     Ft. Worth, TX 76102-6882
                                                     817-252-5273
                                                     Fax: 817-252-5455
                                                     Email: jay.weimer@usdoj.gov
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Joseph Andrew Magliolo**
                                                     U.S. ATTORNEY'S OFFICE
                                                     1100 Commerce Street

Fourth Floor
Dallas, TX 75242
214-659-8736
Fax: 214-659-8802
Email: joseph.magliolo@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Michael Stephen Warbel**
U.S. DEPARTMENT OF JUSTICE
CRIMINAL DIVISION
1331 F. St. NW
Room 650
Washington, DC 20004
202-514-5605
Fax: 202-373-0779
Email: Michael.Warbel@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Tami Coette Parker**
UNITED STATES ATTORNEY'S
OFFICE
801 Cherry St.
Suite 1700
Fort Worth, TX 76102
817-252-5200
Fax: 817-252-5458
Email: tami.parker@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Timothy Wayne Funnell**
UNITED STATES ATTORNEY'S
OFFICE
Burnett Plaza, Suite 1700
801 Cherry Street, Unit 4
Fort Worth, TX 76102-6882
817-252-5252
Fax: 817-252-5455
Email: tim.funnell@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Winfield D. Ong**
UNITED STATES ATTORNEY'S
OFFICE
10 West Market Street
Suite 2100
Indianapolis, IN 46204
(317) 226-6333
Fax: (317) 226-6125

Email: winfield.ong@usdoj.gov
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/06/2012 | 1 | PETITION for Writ of Habeas Corpus, filed by BRUCE CARNEIL WEBSTER. (Attachments: # 1 Receipt # IP029188)(MAC) (Entered: 04/06/2012) |
| 04/06/2012 | 2 | NOTICE of Appearance by Eric K. Koselke on behalf of Petitioner BRUCE CARNEIL WEBSTER. (MAC) (Entered: 04/06/2012) |
| 04/06/2012 | 3 | DECLARATION of Steven J. Wells re 1 Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2241 by BRUCE CARNEIL WEBSTER. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y)(MAC) (Entered: 04/06/2012) |
| 04/06/2012 | 4 | CIVIL COVER SHEET, filed by Petitioner BRUCE CARNEIL WEBSTER. (MAC) (Entered: 04/06/2012) |
| 04/19/2012 | 5 | MOTION for Attorney Kirsten E. Schubert to Appear pro hac vice, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order Granting Schurbert to appear Pro Hac Vice)(RSF) (Entered: 04/19/2012) |
| 04/19/2012 | 6 | MOTION for Attorney Steven J. Wells to Appear pro hac vice, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order Granting Wells to appear Pro Hac Vice)(RSF) (Entered: 04/19/2012) |
| 04/19/2012 | 7 | RECEIPT #IP029385 in the amount of $ 30.00 regarding PHV appearance of Kirsten E. Schubert. (RSF) (Entered: 04/19/2012) |
| 04/19/2012 | 8 | RECEIPT #IP029386 in the amount of $ 30.00 regarding PHV appearance of Steven J. Wells. (RSF) (Entered: 04/19/2012) |
| 04/19/2012 | 9 | ENTRY and ORDER TO SHOW CAUSE - A copy of this Entry and Order to Show Cause shall be distributed to the United States Attorney. The respondent shall have through May 30, 2012, in which to answer the allegations of the habeas petition, and in doing so shall show cause why the relief sought by the petitioner should not be granted. The petitioner shall have thirty (30) days after service of the answer in which to reply. (See Entry.) Copies mailed pursuant to distribution list. Signed by Judge William T. Lawrence on 4/19/2012.(RSF) (Entered: 04/19/2012) |
| 04/19/2012 | 10 | ***PLEASE NOTE MARGINAL ENTRY***ORDER granting 6 Motion to Appear pro hac vice. Attorney Steven J. Wells for BRUCE CARNEIL |

| | | |
|---|---|---|
| | | WEBSTER added. Signed by Magistrate Judge William G. Hussmann, Jr., on 4/19/2012. (NRN) (Entered: 04/19/2012) |
| 04/19/2012 | 11 | ***PLEASE NOTE MARGINAL ENTRY***ORDER granting 5 Motion to Appear pro hac vice. Attorney Kristen E. Schubert for BRUCE CARNEIL WEBSTER added. Signed by Magistrate Judge William G. Hussmann, Jr., on 4/19/2012. (NRN) (Entered: 04/19/2012) |
| 05/02/2012 | 12 | NOTICE of Appearance by Gerald A. Coraz on behalf of Respondent CHARLES LOCKETT. (Coraz, Gerald) (Entered: 05/02/2012) |
| 05/02/2012 | 13 | MOTION for Extension of Time to August 28, 2012 , filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Text of Proposed Order)(Coraz, Gerald) (Entered: 05/02/2012) |
| 05/09/2012 | 14 | ENTRY - granting in part and denying in part 13 Motion for Extension of Time. The respondent shall have through July 10, 2012, in which to show cause why the relief sought by the petitioner shall not be granted. (See Entry.) Signed by Judge William T. Lawrence on 5/9/2012. (RSF) (Entered: 05/09/2012) |
| 07/03/2012 | 15 | Second MOTION for Extension of Time to August 9, 2012 , filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Text of Proposed Order)(Coraz, Gerald) (Entered: 07/03/2012) |
| 07/08/2012 | 16 | ORDER - granting 15 Motion for Extension of Time, to 8/9/12, in which to respond to the petitioner's Writ of Habeas Corpus. Signed by Judge William T. Lawrence on 7/8/2012. (RSF) Modified on 7/9/2012 - removed language regarding mailing copy to petitioner (RSF). (Entered: 07/09/2012) |
| 08/07/2012 | 17 | RETURN TO ORDER TO SHOW CAUSE, re 9 Order to Show Cause, filed by CHARLES LOCKETT.. (Attachments: # 1 Attach 1-Summary Evidence, # 2 Attach 2-Westlaw Document)(Coraz, Gerald) (Entered: 08/07/2012) |
| 08/16/2012 | 18 | First MOTION for Extension of Time to September 29, 2012 , filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Schubert, Kirsten) (Entered: 08/16/2012) |
| 08/16/2012 | 19 | Amended MOTION for Extension of Time to September 28, 2012 , filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Schubert, Kirsten) (Entered: 08/16/2012) |
| 08/20/2012 | 20 | ENTRY - denying as moot 18 Motion for Extension of Time, and granting 19 Motion for Extension of Time, to 9/28/12, in which to file reply. Signed by Judge William T. Lawrence on 8/20/2012. (RSF) Modified on 8/20/2012 (RSF). (Entered: 08/20/2012) |
| 09/20/2012 | 21 | Second MOTION for Extension of Time to October 12, 2012 , filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Proposed Order)(Schubert, Kirsten) (Entered: 09/20/2012) |
| 09/24/2012 | 22 | ORDER - granting 21 Motion for Extension of Time, to 10/12/12, in which to Reply to Respondent's Return to Order to Show Cause. Signed by Judge |

| | | |
|---|---|---|
| | | William T. Lawrence on 9/24/2012. (RSF) (Entered: 09/24/2012) |
| 10/12/2012 | 23 | RESPONSE *Reply to Return to Order to Show Cause*, re 17 Return to Order to Show Cause, filed by Petitioner BRUCE CARNEIL WEBSTER. (Schubert, Kirsten) (Entered: 10/12/2012) |
| 10/12/2012 | 24 | AFFIDAVIT re 23 Response *of Kirsten E. Schubert* by BRUCE CARNEIL WEBSTER. (Attachments: # 1 Exhibit Exhibit A - 6-24-08 Rodgers Letter) (Schubert, Kirsten) (Entered: 10/12/2012) |
| 10/12/2012 | 25 | DECLARATION of Kristen K. LeRoux re 23 Response by BRUCE CARNEIL WEBSTER. (Attachments: # 1 Exhibit A - 1996 Fax to SSA, # 2 Exhibit B - 10-27-08 Letter to SSA, # 3 Exhibit C - 12-15-08 Letter to SSA, # 4 Exhibit D - 10-8-09 Letter to SSA, # 5 Exhibit E - 10-22-09 Letter from SSA, # 6 Exhibit F - 11-23-09 Letter to SSA, # 7 Exhibit G - 12-4-09 Letter from SSA)(Schubert, Kirsten) (Entered: 10/12/2012) |
| 09/03/2013 | 26 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, Eric K. Koselke hereby notifies the Clerk of the court of changed contact information. (Koselke, Eric) (Entered: 09/03/2013) |
| 10/07/2013 | 27 | ORDER Granting in Part and Denying in Part United States' Motion for a Stay of Civil Proceedings in which the United States, its Agencies, or Officers are a Party. All such Civil actions are STAYED and immediately suspended, postponed and held in abeyance, pending further Order of the Court, except habeas corpus proceedings and those which are specifically exempted form this Order in Exhibit A. A copy of the United States Motion is attached to this Docket Entry. This Order is docketed into the following cases: 1:13-cv-01092-TWP-MJD, 1:13-cv-01093-WTL-TAB, 1:13-cv-01101-SEB-DKL, 1:13-cv-01110-RLY-MJD, 1:13-cv-01118-SEB-DKL, 1:13-cv-01119-SEB-MJD, 1:13-cv-01128-WTL-MJD, 1:13-cv-01132-SEB-DKL, 1:13-cv-01137-RLY-MJD, 1:13-cv-01141-SEB-DKL, 1:13-cv-01170-JMS-TAB, 1:13-cv-01172-JMS-DKL, 1:13-cv-01182-SEB-TAB, 1:13-cv-01200-SEB-DML, 1:13-cv-01209-TWP-MJD, 1:13-cv-01212-WTL-DML, 1:13-cv-01257-JMS-MJD, 1:13-cv-01283-RLY-MJD, 1:13-cv-01361-SEB-MJD, 1:13-cv-01381-TWP-DML, 1:13-cv-01383-RLY-DML, 1:13-cv-01517-TWP-DKL, 2:10-cv-00042-LJM-MJD, 2:10-cv-00140-JMS-WGH, 2:10-cv-00149-WTL-WGH, 2:10-cv-00172-JMS-WGH, 2:10-cv-00180-WTL-TAB, 2:10-cv-00244-WTL-WGH, 2:10-cv-00314-WTL-WGH, 2:11-cv-00004-LJM-WGH, 2:11-cv-00015-WTL-DKL, 2:11-cv-00091-WTL-DKL, 2:11-cv-00142-JMS-DKL, 2:11-cv-00149-WTL-WGH, 2:11-cv-00187-JMS-WGH, 2:11-cv-00262-JMS-DKL, 2:11-cv-00263-WTL-WGH, 2:11-cv-00299-WTL-WGH, 2:11-cv-00300-JMS-WGH, 2:11-cv-00337-JMS-MJD, 2:12-cv-00061-WTL-WGH, 2:12-cv-00080-WTL-WGH, 2:12-cv-00086-WTL-WGH, 2:12-cv-00109-WTL-DKL, 2:12-cv-00176-JMS-MJD, 2:12-cv-00177-JMS-WGH, 2:12-cv-00206-WTL-DKL, 2:12-cv-00211-WTL-DKL, 2:12-cv-00224-JMS-MJD, 2:12-cv-00248-LJM-DKL. Signed by Judge Richard L. Young on 10/7/2013. (Attachments: # 1 Motion to Stay)(MAC) (Entered: 10/07/2013) |
| 10/18/2013 | 28 | ORDER granting United States Motion for Order Lifting Stay of Civil |

| | | |
|---|---|---|
| | | Litigation in which the United States is a Party. Unless otherwise ordered by a judge of this Court or a bankruptcy judge in a particular case, any deadlines in a case, including bankruptcy cases, impacted by this Court's Order of October 7, 2013, imposed by order of a judicial officer of this Court, by a bankruptcy judge, by the Federal Rules of Civil Procedure, or by the Federal Rules of Bankruptcy Procedure, and in effect as of October 1, 2013, are hereby extended by 16 calendar days from the deadline. Any party may seek relief from this general Order extending time by motion in a particular case. This Order is docketed into the following cases: 1:13-cv-01092-TWP-MJD, 1:13-cv-01093-WTL-TAB, 1:13-cv-01101-SEB-DKL, 1:13-cv-01110-RLY-MJD, 1:13-cv-01118-SEB-DKL, 1:13-cv-01119-SEB-MJD, 1:13-cv-01128-WTL-MJD, 1:13-cv-01132-SEB-DKL, 1:13-cv-01137-RLY-MJD, 1:13-cv-01141-SEB-DKL, 1:13-cv-01170-JMS-TAB, 1:13-cv-01172-JMS-DKL, 1:13-cv-01182-SEB-TAB, 1:13-cv-01200-SEB-DML, 1:13-cv-01209-TWP-MJD, 1:13-cv-01212-WTL-DML, 1:13-cv-01257-JMS-MJD, 1:13-cv-01283-RLY-MJD, 1:13-cv-01361-SEB-MJD, 1:13-cv-01381-TWP-DML, 1:13-cv-01383-RLY-DML, 1:13-cv-01517-TWP-DKL, 2:10-cv-00042-LJM-MJD, 2:10-cv-00140-JMS-WGH, 2:10-cv-00149-WTL-WGH, 2:10-cv-00172-JMS-WGH, 2:10-cv-00180-WTL-TAB, 2:10-cv-00244-WTL-WGH, 2:10-cv-00314-WTL-WGH, 2:11-cv-00004-LJM-WGH, 2:11-cv-00015-WTL-DKL, 2:11-cv-00091-WTL-DKL, 2:11-cv-00142-JMS-DKL, 2:11-cv-00149-WTL-WGH, 2:11-cv-00187-JMS-WGH, 2:11-cv-00262-JMS-DKL, 2:11-cv-00263-WTL-WGH, 2:11-cv-00299-WTL-WGH, 2:11-cv-00300-JMS-WGH, 2:11-cv-00337-JMS-MJD, 2:12-cv-00061-WTL-WGH, 2:12-cv-00080-WTL-WGH, 2:12-cv-00086-WTL-WGH, 2:12-cv-00109-WTL-DKL, 2:12-cv-00176-JMS-MJD, 2:12-cv-00177-JMS-WGH, 2:12-cv-00206-WTL-DKL, 2:12-cv-00211-WTL-DKL, 2:12-cv-00224-JMS-MJD, 2:12-cv-00248-LJM-DKL. Signed by Judge Richard L. Young on 10/18/2013.(MAC) (Entered: 10/18/2013) |
| 11/13/2013 | 29 | ENTRY ON PETITION FOR WRIT OF HABEAS CORPUS - This cause is before the Court on Petitioner Bruce Carneil Webster's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. 1 Webster's motion is fully briefed, and the Court, being duly advised, DENIES the motion for the reasons set forth below. (See Entry.) Signed by Judge William T. Lawrence on 11/13/2013.(RSF) Modified on 11/13/2013 (RSF). (Entered: 11/13/2013) |
| 11/13/2013 | 30 | CLOSED JUDGMENT - JUDGMENT - The Petitioner take nothing by his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, and the civil action docketed as Cause No. 2:12-cv-86-WTL-WGH is DISMISSED WITH PREJUDICE. Signed by Judge William T. Lawrence on 11/13/2013.(RSF) Modified on 11/13/2013 (RSF). (Entered: 11/13/2013) |
| 01/09/2014 | 31 | NOTICE OF APPEAL as to 29 Entry, filed by Petitioner BRUCE CARNEIL WEBSTER. (Filing fee $505, receipt number 0756-2920875) (Schubert, Kirsten) (Entered: 01/09/2014) |
| 01/09/2014 | 32 | DOCKETING STATEMENT by BRUCE CARNEIL WEBSTER re 31 Notice of Appeal (Schubert, Kirsten) (Entered: 01/09/2014) |
| 01/09/2014 | 33 | SEVENTH CIRCUIT TRANSCRIPT INFORMATION SHEET by BRUCE |

Case 2:12-cv-00086-JPH-MJD   Document 208   Filed 09/03/19   Page 40 of 57 PageID #: 7182
Case: 19-2683     Document: 1-1     Filed: 09/03/2019     Pages: 57

| | | |
|---|---|---|
| | | CARNEIL WEBSTER re 31 Notice of Appeal (Schubert, Kirsten) (Entered: 01/09/2014) |
| 01/09/2014 | 34 | CERTIFICATE OF SERVICE by BRUCE CARNEIL WEBSTER *Petitioner/Appellant's Proposed List of Additional Items to Designate for Record on Appeal* (Schubert, Kirsten) (Entered: 01/09/2014) |
| 01/09/2014 | 35 | SEVENTH CIRCUIT APPEAL INFORMATION SHEET re 31 Notice of Appeal **- Instructions for Attorneys - Parties' Short Record, Instructions, and Designation of Record information attached.** (JLM) (Entered: 01/09/2014) |
| 01/09/2014 | 36 | **\*\*DEATH PENALTY CASE\*\*** Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 31 Notice of Appeal. **- for Court of Appeals Use Only.** (JLM) (Entered: 01/09/2014) |
| 01/09/2014 | 37 | USCA Case Number 14-1049 for 31 Notice of Appeal filed by BRUCE CARNEIL WEBSTER. (JLM) (Entered: 01/10/2014) |
| 01/13/2014 | 38 | ENTRY and NOTICE - Final judgment was entered in this action for habeas corpus relief on November 13, 2013. The petitioner filed a notice of appeal, which has been processed. Shortly after the notice of appeal was filed the petitioner filed a document entitled Certificate of Service. The court understands this document 34 to indicate the petitioner's desire that the record on appeal include materials which were not part of this court's record at the conclusion of the case. The petitioner's filing described above is in the form of a notice, not a motion. Any request to supplement the record on appeal should be filed not more than 28 calendar days from the issuance of this Entry and Notice. (See Entry.) (USCA # 14-1049) Signed by Judge William T. Lawrence on 1/13/2014.(RSF) \*\*Copy emailed to USCA.\*\* Modified on 1/14/2014 (JLM). (Entered: 01/13/2014) |
| 01/23/2014 | 39 | DESIGNATION of Record on Appeal by BRUCE CARNEIL WEBSTER re 31 Notice of Appeal (Schubert, Kirsten) (Entered: 01/23/2014) |
| 01/30/2014 | 40 | Entry Directing Further Proceedings - The clerk shall prepare and make available to counsel for the parties the record on appeal. This shall be done in whatever number of electronic volumes which will eventually be used by the Court of Appeals. The record thus prepared will be available when requested by the Court of Appeals, together with any materials in a supplemental record which may hereafter be authorized. (USCA #14-1049) Signed by Judge William T. Lawrence on 1/30/2014.(RSF) (Entered: 01/30/2014) |
| 01/30/2014 | 41 | \*\*\*DOCKETED PER DOC #40\*\*\* Transmitted Record on Appeal to counsel re 31 Notice of Appeal by BRUCE CARNEIL WEBSTER. (Attachments: # 1 Pleadings, # 2 Oversized Doc 3 (Part 1 of 2), # 3 Oversized Doc 3 (Part 2 of 2))(JLM) (Entered: 01/30/2014) |
| 07/08/2014 | 42 | Certified and Transmitted Record on Appeal to US Court of Appeals re 31 Notice of Appeal (USCA #14-1049). \*\*DEATH PENALTY CASE\*\* (Attachments: # 1 Pleadings, # 2 Oversized Doc 3 (part 1 of 2), # 3 Oversized |

| | | |
|---|---|---|
| | | Doc 3 (part 2 of 2), # 4 Oversized Doc 41 (part 1 of 3), # 5 Oversized Doc 41 (part 2 of 3), # 6 Oversized Doc 41 (part 3 of 3), # 7 Notice to Transmit Record)(LBT) (Entered: 07/08/2014) |
| 07/08/2014 | 43 | Appeal Remark re 31 Notice of Appeal (USCA #14-1049): Original record on appeal filed electronically by USCA. Contents of record : 1 vol. of pleadings; 5 vol. of loose pleadings. (LBT) (Entered: 07/08/2014) |
| 05/06/2015 | 44 | ORDER of USCA as to 31 Notice of Appeal filed by BRUCE CARNEIL WEBSTER (USCA #14-1049) - Upon consideration of the UNOPPOSED MOTION TO STAY THE MANDATE, filed on May 6, 2015, by counsel for Appellee Charles Daniels,IT IS ORDERED that the motion is GRANTED. The mandate is STAYED untilAugust 31, 2015, pursuant to F.R.A.P. 41(d)(2)(B). (LBT) (Entered: 05/06/2015) |
| 09/23/2015 | 45 | MANDATE of USCA as to 31 Notice of Appeal filed by BRUCE CARNEIL WEBSTER (USCA #14-1049) - The judgment of the District Court is REVERSED, with costs, and the case is REMANDED for further proceedings consistent with the opinion, in accordance with the decision of this court entered on this date. IT IS ORDERED that the motion is GRANTED. The stay of the mandate is liftedand the clerk shall issue the mandate in this appeal immediately. Bill of Costs taxed in favor of: Appellant Bruce Carneil Webster in the amount of: $1,392.42. (MAG) (Entered: 09/23/2015) |
| 09/29/2015 | 46 | MOTION to Substitute Attorney *Wes Hendrix*, filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Text of Proposed Order proposed order)(Hendrix, James) (Entered: 09/29/2015) |
| 10/02/2015 | 47 | NOTICE of Appearance by Winfield D. Ong on behalf of Respondent CHARLES LOCKETT. (Ong, Winfield) (Entered: 10/02/2015) |
| 10/05/2015 | 48 | ENTRY DISCUSSING SELECTED MATTERS - The Clerk of the Court is directed to reopen this case. The motion to substitute attorney (Dkt. No. 46) is GRANTED. Wes Hendrix's appearance shall be shown on the docket, and the appearance of Mr. Coraz is terminated. Signed by Judge William T. Lawrence on 10/5/2015.(RSF) (Entered: 10/05/2015) |
| 10/05/2015 | 49 | ENTRY Directing Further Proceedings - The United States Court of Appeals for the Seventh Circuit has remanded this case for further proceedings. In accordance with Local Rule 16-2, parties shall file their position statements within 21 days. That period shall run from the docketing of this Entry. The parties are encouraged to file a joint statement, setting forth the items on which there is agreement and noting their respective positions as to items on which there is no agreement. Signed by Judge William T. Lawrence on 10/5/2015.(RSF) (Entered: 10/06/2015) |
| 10/06/2015 | 50 | NOTICE of Appearance by Monica Foster on behalf of Petitioner BRUCE CARNEIL WEBSTER. (Foster, Monica) (Entered: 10/06/2015) |
| 10/08/2015 | 51 | NOTICE of Appearance by Monica Foster on behalf of Petitioner BRUCE CARNEIL WEBSTER. (Foster, Monica) (Entered: 10/08/2015) |
| | | |

| | | |
|---|---|---|
| 10/22/2015 | 52 | *** PLEASE DISRESGARD - DOCKETED IN ERROR*** CLOSED JUDGMENT - FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58 - Having this day issued its Entry Reviewing the Commissioner's Decision, the Court now AFFIRMS the Commissioner's decision and enters FINAL JUDGMENT against Plaintiff David B. Mallernee, and in favor of Defendant, such that Mr. Mallernee shall take nothing by way of his Complaint. Copy to plaintiff via US Mail. Signed by Judge Jane Magnus-Stinson on 10/22/2015. (RSF) Modified on 10/22/2015 (RSF). (Entered: 10/22/2015) |
| 10/22/2015 | 53 | MOTION for Extension of Time to 11/10/2015 *to file the Rule 16-2 position statement*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Schubert, Kirsten) (Entered: 10/22/2015) |
| 10/26/2015 | 54 | ORDER - granting 53 Motion for Extension of Time. The parties shall have up to and through November 10, 2015, to file the Rule 16-2 position statement. Signed by Judge William T. Lawrence on 10/26/2015. (RSF) (Entered: 10/26/2015) |
| 11/10/2015 | 55 | Statement *of Position of the Parties-Rule 16-2* by CHARLES LOCKETT. (Hendrix, James) (Entered: 11/10/2015) |
| 11/13/2015 | 56 | ENTRY REGARDING STATUS CONFERENCE - Status Conference set for 1/15/2016 at 10:00 AM before Judge William T. Lawrence, to discuss the issues raised by the Rule 16-2 Statement of Position of the Parties (Dkt. No. 55). The parties also should be prepared to establish scheduling, including a date for an in- person Rule 16 conference, and discuss any necessary further briefing. Counsel shall call 317- 229-3610 at the designated time. Signed by Judge William T. Lawrence on 11/13/2015.(RSF) (Entered: 11/13/2015) |
| 01/07/2016 | 57 | Unopposed MOTION *to Re-Set Telephonic Status Conference*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Schubert, Kirsten) (Entered: 01/07/2016) |
| 01/11/2016 | 58 | ORDER - This matter having come before the Court on the Petitioner's Motion to Re-Set Telephonic Status Conference, this Court, having considered the above action and matters which are pending, makes the following rulings: 1. The Petitioner's 57 Motion to Re-Set Telephonic Status Conference is GRANTED; and 2. The telephonic status conference is re-set for February 11, 2016 at 10:00 a.m. Signed by Judge William T. Lawrence on 1/11/2016. (GSO) (Entered: 01/11/2016) |
| 01/20/2016 | 59 | NOTICE of Appearance by Timothy Wayne Funnell on behalf of Respondent CHARLES LOCKETT. (Funnell, Timothy) (Entered: 01/20/2016) |
| 01/20/2016 | 60 | NOTICE of Appearance by Jay Steveson Weimer on behalf of Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 01/20/2016) |
| 02/01/2016 | 61 | Reassignment of Case to Magistrate Judge Mark J. Dinsmore. Magistrate Judge William G. Hussmann, Jr., is no longer assigned to the case. Please include the new case number (2:12-cv-00086-WTL-MJD), which includes the initials of the newly assigned judge, on all future filings in this matter. (JD) |

| | | (Entered: 02/01/2016) |
|---|---|---|
| 02/12/2016 | 62 | MINUTE ORDER for telephonic status conference held 2/11/2016 before Judge William T. Lawrence:***See Entry***. Additional briefing due 2/26/2016. Signed by Judge William T. Lawrence. (Court Reporter Cathy Jones.)(CMC) (Entered: 02/12/2016) |
| 02/26/2016 | 63 | Brief *in Support of Petitioner's Request to Seek Discovery from the Office of the United States Attorney* by BRUCE CARNEIL WEBSTER. (Schubert, Kirsten) (Entered: 02/26/2016) |
| 02/26/2016 | 64 | DECLARATION of Kirsten E. Schubert *in Support of Petitioner's Request to Seek Discovery from the Office of the United States Attorney* re 63 Brief (Habeas) by BRUCE CARNEIL WEBSTER. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Schubert, Kirsten) Modified on 2/29/2016 (GSO). (Entered: 02/26/2016) |
| 02/29/2016 | 65 | CERTIFICATE OF SERVICE by BRUCE CARNEIL WEBSTER re 63 Brief (Habeas) *in Support of Petitioner's Request to Seek Discovery from the Office of the United States Attorney* (Schubert, Kirsten) (Entered: 02/29/2016) |
| 02/29/2016 | 66 | CERTIFICATE OF SERVICE by BRUCE CARNEIL WEBSTER re 64 Declaration *of Kirsten E. Schubert in Support of Petitioner's Request to Seek Discovery from the Office of the United States Attorney* (Schubert, Kirsten) (Entered: 02/29/2016) |
| 03/09/2016 | 67 | RESPONSE in Opposition *to Webster's Discovery Motion*, filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Declaration of Tim Funnell, # 2 Exhibit 1 - Delcaration of Richard B. Roper, # 3 Exhibit 2 - Declaration of Delonia A. Watson, # 4 Exhibit 3 - Declaration of Edmund F. Grant)(Funnell, Timothy) (Entered: 03/09/2016) |
| 03/14/2016 | 68 | RESPONSE *in Support of Petitioner's Discovery Motion*, re 63 Brief(Habeas), filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Declaration of Kirsten E. Schubert, # 2 Exhibit 3, # 3 Exhibit 4)(Schubert, Kirsten) (Entered: 03/14/2016) |
| 03/24/2016 | 69 | ENTRY ON PETITIONER'S REQUEST TO SEEK DISCOVERY FROM THE OFFICE OF THE UNITED STATES ATTORNEY - The Court GRANTS IN PART Petitioner's Request to Seek Discovery from the Office of the United States Attorney and allows Webster to issue requests for production from the Office of the United States Attorney for the Northern District of Texas. (See Entry.) Signed by Judge William T. Lawrence on 3/24/2016. (GSO) (Entered: 03/24/2016) |
| 11/27/2017 | 71 | Unopposed MOTION *To Set Telephonic Status Conference*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Schubert, Kirsten) (Entered: 11/27/2017) |
| 11/28/2017 | 72 | ORDER granting 71 Motion To Set Telephonic Status Conference - Telephonic Status Conference set for 12/21/2017 at 10:00 AM before Judge William T. Lawrence. The parties shall call (317) 229-3610 to initiate the |

| | | |
|---|---|---|
| | | conference. Signed by Judge William T. Lawrence on 11/28/2017.(JRB) (Entered: 11/28/2017) |
| 11/30/2017 | 73 | MOTION for Attorney(s) Kathryn Johnson to Appear pro hac vice (Filing fee $100, receipt number 0756-4651309), filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Exhibit A-Certification of Kathryn A. Johnson, # 2 Text of Proposed Order)(Schubert, Kirsten) (Entered: 11/30/2017) |
| 12/01/2017 | 74 | ORDER granting 73 Motion to Appear pro hac vice. Attorney Kathryn A. Johnson for BRUCE CARNEIL WEBSTER, Petitioner. If not already registered with the Court's Electronic Filing System, Kathryn A. Johnson is ordered to register within ten (10) days of the entry of this order. Signed by Magistrate Judge Mark J. Dinsmore on 12/1/2017. (DW) (Entered: 12/01/2017) |
| 12/27/2017 | 75 | ENTRY REGARDING STATUS CONFERENCE - A telephonic status conference on this matter was held on December 21, 2017. Attorneys Steven Wells, Kirsten Schubert, and Monica Foster appeared for Bruce Webster. Attorneys Jay Weimer and Tim Funnell appeared for Charles Lockett. Webster's counsel updated the Court as to their efforts to obtain records and other information from the Social Security Administration ("SSA"). They informed the Court that they plan to file a motion asking the Court to issue subpoenas to the SSA. Any such motion shall be filed by January 5, 2018. Any response shall be filed by February 2, 2018, and any reply shall be filed by February 16, 2018. The parties requested that the Court schedule a hearing on the threshold issues of whether the Social Security records were unavailable to Webster and whether his trial counsel exercised due diligence. That hearing is scheduled to begin on June 18, 2018 at 9 a.m. The Court will make a decision at a later date as to whether the hearing will be held in Indianapolis or Terre Haute. Signed by Judge William T. Lawrence on 12/27/2017.(RSF) (Entered: 12/27/2017) |
| 01/05/2018 | 76 | MOTION *to Issue a Subpoena to the Social Security Administration*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Exhibit A - Subpoena for Documents and Information, # 2 Exhibit B - Subpoena for Testimony, # 3 Text of Proposed Order [Proposed] Order Granting Petitioner's Motion to Issue a Subpoena)(Schubert, Kirsten) (Entered: 01/05/2018) |
| 01/05/2018 | 77 | BRIEF/MEMORANDUM in Support re 76 MOTION *to Issue a Subpoena to the Social Security Administration* , filed by Petitioner BRUCE CARNEIL WEBSTER. (Schubert, Kirsten) (Entered: 01/05/2018) |
| 01/05/2018 | 78 | DECLARATION of Kirsten Schubert *in Support of Petitioner's Motion to Issue a Subpoena to the Social Security Administration* re 76 Motion (Other) by BRUCE CARNEIL WEBSTER. (Attachments: # 1 Exhibit A - April 19, 2016 Letter from Dorsey, # 2 Exhibit B - June 22, 2016 Email from Velte, # 3 Exhibit C - Sept. 23, 2016 Letter from Chitwood, # 4 Exhibit D -July 17, 2017 Letter from Dorsey, # 5 Exhibit E - July 27, 2017 Email from Velte, # 6 Exhibit F - Nov. 15, 2017 Letter from Dorsey, # 7 Exhibit G - Nov. 29, 2017 Letter from Chitwood, # 8 Exhibit H - Sept. 21, 2015 Interview with |

|  |  | Ferguson, # 9 Exhibit I - Sept. 24, 2015 Interview with Ward, # 10 Exhibit J - Sept. 24, 2015 Email Exchange between Ward and SA Grant, # 11 Exhibit K - Jan. 4, 2016 Interview with Rees, # 12 Exhibit L - Jan. 5, 2016 Letter from SA Elsey to Luna, # 13 Exhibit M - May 18, 2016 Letter from Gunn, # 14 Exhibit N - Jan. 27, 2005 SSA Document Retention Schedule, # 15 Exhibit O - National Archives and Records Administration Record Retention Schedules from 1993 to Present)(Schubert, Kirsten) (Entered: 01/05/2018) |
|---|---|---|
| 01/25/2018 | 79 | NOTICE of Appearance by Tami Coette Parker on behalf of Respondent CHARLES LOCKETT. (Parker, Tami) (Entered: 01/25/2018) |
| 02/02/2018 | 80 | RESPONSE in Opposition re 76 MOTION *to Issue a Subpoena to the Social Security Administration* , filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Appendix Declaration of Henry Velte)(Parker, Tami) (Entered: 02/02/2018) |
| 02/02/2018 | 81 | Amended RESPONSE re 80 Response in Opposition re 76 MOTION to Issue a Subpoena to the Social Security Administration , filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Appendix Declaration of Henry Velte)(Parker, Tami) Modified on 2/5/2018 (DW). (Entered: 02/02/2018) |
| 02/15/2018 | 82 | Unopposed MOTION for Extension of Time to File Reply to February 23, 2018 re 76 MOTION *to Issue a Subpoena to the Social Security Administration* , filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Johnson, Kathryn) (Entered: 02/15/2018) |
| 02/16/2018 | 83 | ORDER granting 82 Motion for Extension of Time to File Reply to 2/23/2018 re 76 MOTION *to Issue a Subpoena to the Social Security Administration*. Signed by Magistrate Judge Mark J. Dinsmore on 2/16/2018. (DW) (Entered: 02/16/2018) |
| 02/23/2018 | 84 | REPLY in Support of Motion re 76 MOTION *to Issue a Subpoena to the Social Security Administration* , filed by Petitioner BRUCE CARNEIL WEBSTER. (Schubert, Kirsten) (Entered: 02/23/2018) |
| 03/02/2018 | 85 | MOTION for Leave to File *a Surreply*, filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Appendix Proposed Surreply)(Parker, Tami) (Entered: 03/02/2018) |
| 03/05/2018 | 86 | Submission of Proposed Order , re 85 MOTION for Leave to File *a Surreply*, filed by Respondent CHARLES LOCKETT. (Parker, Tami) Modified on 3/5/2018 (REO). (Entered: 03/05/2018) |
| 03/16/2018 | 87 | RESPONSE in Opposition re 85 MOTION for Leave to File *a Surreply* , filed by Petitioner BRUCE CARNEIL WEBSTER. (Schubert, Kirsten) (Entered: 03/16/2018) |
| 03/23/2018 | 88 | REPLY in Support of Motion re 85 MOTION for Leave to File *a Surreply* , filed by Respondent CHARLES LOCKETT. (Parker, Tami) (Entered: 03/23/2018) |
|  |  |  |

| | | |
|---|---|---|
| 04/02/2018 | 89 | ENTRY ON WEBSTER'S MOTION TO ISSUE SUBPOENA TO SOCIAL SECURITY ADMINISTRATION - Accordingly, Webster's motion to issue a subpoena to the Social Security Administration 76 is DENIED (SEE ENTRY). Signed by Judge William T. Lawrence on 4/2/2018. (DW) (Entered: 04/02/2018) |
| 05/23/2018 | 90 | ENTRY - The hearing scheduled to begin June 18, 2018 at 9:00 a.m. will take place in Courtroom 202, U.S. Courthouse, 46 E. Ohio St., Indianapolis, IN. The Court has allocated one day for the hearing. (DW) (Entered: 05/23/2018) |
| 06/01/2018 | 91 | Exhibit List *for June 18, 2018 Evidentiary Hearing*, filed by Respondent CHARLES LOCKETT. (Funnell, Timothy) (Entered: 06/01/2018) |
| 06/01/2018 | 92 | Witness List *for June 18, 2018 Evidentiary Hearing*, filed by Respondent CHARLES LOCKETT. (Funnell, Timothy) (Entered: 06/01/2018) |
| 06/01/2018 | 93 | TRIAL BRIEF *regarding Evidentiary Hearing of June 18, 2018* by CHARLES LOCKETT. (Funnell, Timothy) (Entered: 06/01/2018) |
| 06/01/2018 | 94 | APPENDIX re 93 Trial Brief by CHARLES LOCKETT. (Attachments: # 1 **RESTRICTED** Appendix Pages 001-151)(Funnell, Timothy) Modified on 6/14/2018 (DW). (Entered: 06/01/2018) |
| 06/01/2018 | 95 | MOTION in Limine *for Spoliation Sanctions*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Wells, Steven) (Entered: 06/01/2018) |
| 06/01/2018 | 96 | Witness List , filed by Petitioner BRUCE CARNEIL WEBSTER. (Wells, Steven) (Entered: 06/01/2018) |
| 06/01/2018 | 97 | TRIAL BRIEF by BRUCE CARNEIL WEBSTER. (Wells, Steven) (Entered: 06/01/2018) |
| 06/01/2018 | 98 | Exhibit List , filed by Petitioner BRUCE CARNEIL WEBSTER. (Wells, Steven) (Entered: 06/01/2018) |
| 06/07/2018 | 99 | ORDER - Pursuant to the Order of this Court, Dkt. No. 75 , a Writ of Order of Habeas Corpus Ad Prosequendum is necessary requiring the presence of Bruce Carneil Webster, Reg. No. 26177-077, date of birth XX/XX/1973, now confined at Terre Haute USP, 4700 Bureau Road South, Terre Haute, Indiana 47802, in the custody of the Warden, before the United States District Court, before the Honorable William T. Lawrence for the Southern District of Indiana, at Indianapolis, Indiana, on June 18, 2018 at 9:00 a.m. in courtroom 202, and thereafter until excused. The Court ORDERS that the Clerk issue the proper writ or order to compel such attendance under safe conduct, as provided by law. Signed by Judge William T. Lawrence on 6/7/2018.(APD) (Entered: 06/07/2018) |
| 06/07/2018 | 100 | WRIT of Habeas Corpus Ad Prosequendum issued by Clerk. Paper copies to USM. (APD) (Entered: 06/07/2018) |
| 06/13/2018 | 101 | RESPONSE in Opposition re 95 MOTION in Limine *for Spoliation Sanctions* , filed by Respondent CHARLES LOCKETT. (Funnell, Timothy) |

| | | |
|---|---|---|
| | | (Entered: 06/13/2018) |
| 06/14/2018 | 102 | Exhibit List , filed by Respondent CHARLES LOCKETT. (Funnell, Timothy) (Entered: 06/14/2018) |
| 06/15/2018 | 103 | MOTION *[Plaintiff's Uncontested Motion to Maintain Hearing Exhibits Under Seal]*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Johnson, Kathryn) (Entered: 06/15/2018) |
| 06/15/2018 | 104 | BRIEF/MEMORANDUM in Support re 103 MOTION *[Plaintiff's Uncontested Motion to Maintain Hearing Exhibits Under Seal]* , filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) (Entered: 06/15/2018) |
| 06/15/2018 | 105 | Exhibit List *[Petitioner's First Amended Hearing Exhibit List*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) (Entered: 06/15/2018) |
| 06/15/2018 | 106 | STIPULATION *Regarding Authenticity and Admissibility of Documents*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) (Entered: 06/15/2018) |
| 06/17/2018 | 107 | REPLY in Support of Motion re 95 MOTION in Limine *for Spoliation Sanctions* , filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) (Entered: 06/17/2018) |
| 06/18/2018 | 108 | ORDER - The Court, having considered Petitioner Bruce Webster's 103 Unopposed Motion to Maintain Hearing Exhibits Under Seal and the materials filed in support thereof, finds good cause and hereby GRANTS Petitioner's motion to maintain the hearing exhibits specified in this Order under seal. (See Order). Signed by Judge William T. Lawrence on 6/18/2018. (APD) (Entered: 06/18/2018) |
| 06/21/2018 | 109 | Minute Entry for proceedings held before Judge William T. Lawrence: Evidentiary Hearing held on 6/18/2018. See Entry. Parties' proposed findings of fact and conclusions of law shall be filed by July 9, 2018. (Court Reporter Maggie Techert.) (CMC) (Entered: 06/21/2018) |
| 06/27/2018 | 110 | WRIT of Habeas Corpus Ad Prosequendum Returned 6/18/2018 as to Plaintiff. (DWH) (Entered: 06/28/2018) |
| 07/05/2018 | 111 | Unopposed MOTION for Extension of Time to July 16, 2018 *to File Proposed Findings of Fact and Conclusions of Law*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Johnson, Kathryn) (Entered: 07/05/2018) |
| 07/09/2018 | 112 | ORDER granting 111 Motion for Extension of Time. Petitioner and Respondent shall have up to and through July 16, 2018 to file Proposed Findings of Fact and Conclusions of Law. Signed by Judge William T. Lawrence on 7/9/2018. (DWH) (Entered: 07/09/2018) |
| 07/16/2018 | 113 | Proposed Findings of Fact by CHARLES LOCKETT. (Funnell, Timothy) |

| | | (Entered: 07/16/2018) |
|---|---|---|
| 07/16/2018 | 114 | Proposed Findings of Fact (*Spoliation*) by CHARLES LOCKETT. (Funnell, Timothy) Modified on 7/17/2018 (DWH). (Entered: 07/16/2018) |
| 07/16/2018 | 115 | Proposed Findings of Fact by BRUCE CARNEIL WEBSTER. (Schubert, Kirsten) (Entered: 07/16/2018) |
| 08/27/2018 | 116 | MARGINAL ENTRY- Denying as moot 85 Motion for Leave to File a Surreply in light of ruling found at Dkt. No. 89 . Signed by Judge William T. Lawrence on 8/27/2018. (DMW) (Entered: 08/27/2018) |
| 08/31/2018 | 117 | ENTRY FOLLOWING HEARING OF JUNE 18, 2018 - The Court finds that Webster has met his burden and shown by a preponderance of the evidence that the Social Security records were unavailable to him at the time of trial despite trial counsel's due diligence. As such, they constitute newly discovered evidence. Accordingly, Webster has satisfied the savings clause, and the Court next must turn to the merits of the petition and determine whether Webster is so intellectually disabled that he is categorically ineligible for the death penalty. A telephonic status conference will be set by separate order (SEE ENTRY FOR ADDITIONAL INFORMATION). Signed by Judge William T. Lawrence on 8/31/2018. (DWH) (Entered: 08/31/2018) |
| 09/06/2018 | 118 | ENTRY FOR SEPTEMBER 6, 2018: This matter is hereby set for a telephonic status conference on September 19, 2018 at 9:00 a.m. The purpose of the status conference is to discuss the hearing that the Court will hold to determine whether Webster is so intellectually disabled that he is categorically ineligible for the death penalty. The parties should be prepared to discuss how long they will need to prepare for the hearing; approximately how long they anticipate that the hearing will be; and if they plan to file any motions, what the briefing schedule for those motions should be. The parties shall call (877) 848-7030, Access Code 8876823, at the time of the hearing.(DWH) (Entered: 09/06/2018) |
| 09/28/2018 | 119 | SCHEDULING ORDER: This cause is set for a hearing on April 1, 2019, at 9:00 a.m. to determine whether Bruce Webster is intellectually disabled and thus categorically ineligible for the death penalty. The Court has set aside a week on its calendar for the hearing. The Court will determine at a later date whether the hearing will be held in Indianapolis or Terre Haute. Discovery due by 2/18/2019. (See Order for additional deadlines.) Signed by Judge William T. Lawrence on 9/28/2018. (DMW) (Entered: 10/01/2018) |
| 10/01/2018 | 120 | NOTICE of Appearance by Joseph Andrew Magliolo on behalf of Respondent CHARLES LOCKETT. (Magliolo, Joseph) (Entered: 10/01/2018) |
| 11/09/2018 | 121 | MOTION to Compel *Examination of Petitioner Bruce Carneil Webster*, filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Text of Proposed Order)(Weimer, Jay) (Entered: 11/09/2018) |
| 11/09/2018 | 122 | NOTICE of FILING of OFFICIAL TRANSCRIPT of Telephonic Status Conference held before Judge William T. Lawrence on September 19, 2018 |

| | | |
|---|---|---|
| | | (Jones, Cathy) (Entered: 11/09/2018) |
| 11/09/2018 | 123 | TRANSCRIPT of Telephonic Status Conference held on September 19, 2018, before Judge William T. Lawrence. (13 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 11/30/2018. Release of Transcript Restriction set for 2/7/2019. (Jones, Cathy) Released on 2/7/2019 (SWM). (Entered: 11/09/2018) |
| 11/16/2018 | 124 | RESPONSE in Opposition re 121 MOTION to Compel *Examination of Petitioner Bruce Carneil Webster* , filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Affidavit Declaration, # 2 Affidavit Declaration, # 3 Exhibit A-Telephonic Status Conference Transcript, # 4 Exhibit B-Government's Opposition to Movant's Request, # 5 Exhibit C-Brief for Respondent-Appellee, # 6 Exhibit D-Dr. George Parker Letter re Webster exam, # 7 Exhibit E-Excerpt of Vol. 26 of trial transcript, # 8 Text of Proposed Order)(Wells, Steven) (Entered: 11/16/2018) |
| 11/20/2018 | 125 | REPLY in Support of Motion re 121 MOTION to Compel *Examination of Petitioner Bruce Carneil Webster* , filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 11/20/2018) |
| 11/21/2018 | 126 | ENTRY ON RESPONDENT'S MOTION TO COMPEL EXAMINATION OF PETITIONER - This cause is before the Court on the Respondent's Motion to Compel Examination of Petitioner Bruce Carneil Webster (Dkt. No. 121 ). The Court GRANTS the Government's motion to the following extent: Webster shall submit to testing by Dr. Robert Denney. The testing will take place on November 28 and 29 at USP Terre Haute. The Bureau of Prisons is ordered to make such arrangements as necessary to allow the testing to take place on these dates. The parties shall confer and agree on a testing and observational protocol. If the parties are unable to reach an agreement, each shall file its proposed testing and observational protocol with the Court by 5:00 p.m. on November 26, 2018. (See Entry.) Signed by Judge William T. Lawrence on 11/21/2018. (DMW) (Entered: 11/21/2018) |
| 12/03/2018 | 127 | Preliminary Witness List *and Exhibit List*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) Modified on 12/4/2018 to edit docket text (DMW). (Entered: 12/03/2018) |
| 12/10/2018 | 128 | Witness List , filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 12/10/2018) |
| 12/10/2018 | 129 | Exhibit List , filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 12/10/2018) |
| 12/11/2018 | 132 | ENTRY FOR DECEMBER 11, 2018 - Telephonic Status Conference set for 2/14/2019 at 4:00 PM (Eastern Time) before Judge William T. Lawrence. Signed by Judge William T. Lawrence on 12/11/2018. (DMW) (Entered: 12/11/2018) |
| 12/11/2018 | 133 | MOTION to Amend/Correct *the Scheduling Order*, filed by Petitioner |

| | | |
|---|---|---|
| | | BRUCE CARNEIL WEBSTER. (Attachments: # 1 Affidavit Katheryn A. Johnson, # 2 Text of Proposed Order)(Johnson, Kathryn) (Entered: 12/11/2018) |
| 12/11/2018 | 134 | RESPONSE in Opposition re 133 MOTION to Amend/Correct *the Scheduling Order* , filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 12/11/2018) |
| 12/12/2018 | 135 | ENTRY FOR DECEMBER 12, 2018 HONORABLE WILLIAM T. LAWRENCE - The above cause is set for a telephonic status conference on Wednesday, December 12, 2018, at 10:00 a.m. E.S.T. Counsel will be provided call-in information by separate order. Signed by Judge William T. Lawrence on 12/12/2018.(APD) (Entered: 12/12/2018) |
| 12/12/2018 | 137 | ENTRY REGARDING STATUS CONFERENCE - A telephonic status conference on this matter was held on December 12, 2018. By December 14, 2018, the parties shall file a proposed Revised Scheduling Order that is consistent with the discussion had during the status conference. (See Entry.) Signed by Judge William T. Lawrence on 12/12/2018. (DMW) (Entered: 12/12/2018) |
| 12/14/2018 | 138 | Joint MOTION *to Amend Scheduling Order*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order [Proposed] Amended Scheduling Order)(Johnson, Kathryn) (Entered: 12/14/2018) |
| 12/19/2018 | 139 | AMENDED SCHEDULING ORDER - This cause is set for a hearing on April 1, 2019, at 9:00 a.m. to determine whether Bruce Webster is intellectually disabled and thus categorically ineligible for the death penalty. The Court has set aside a week on its calendar for the hearing. The Court will determine at a later date whether the hearing will be held in Indianapolis or Terre Haute. Discovery due by 3/8/2019. (See Order.) Signed by Judge William T. Lawrence on 12/19/2018. (DMW) (Entered: 12/19/2018) |
| 02/08/2019 | 142 | ENTRY FOR FEBRUARY 8, 2019 HONORABLE WILLIAM T. LAWRENCE - The above cause is set for a telephonic status conference on Thursday, February 14, 2019 at 4:00 pm. E.S.T. **Counsel are to call (877) 848-7030 and use access code 8876823.**(APD) (Entered: 02/08/2019) |
| 02/13/2019 | 143 | NOTICE of Change of Attorney Information. Consistent with Local Rule 5-3, James Wesley Hendrix hereby notifies the Clerk of the court of changed contact information. (Hendrix, James) (Entered: 02/13/2019) |
| 02/15/2019 | 144 | ENTRY REGARDING STATUS CONFERENCE - A telephonic status conference on this matter was held on February 14, 2019. Attorney Kirsten Schubert appeared for Bruce Webster. Attorneys Jay Weimer and Tami Parker appeared for the Respondent. The parties discussed the location and anticipated length of the hearing that will begin on April 1, 2019. Based on the discussions, the Court has set aside five days for the hearing. The parties shall exchange exhibits and file stipulations with the Court by March 8, 2019. (Court Reporter Cathy Jones.) (APD) (Entered: 02/15/2019) |
| | | |

| 03/01/2019 | 145 | Witness List , filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 03/01/2019) |
|---|---|---|
| 03/01/2019 | 146 | Exhibit List , filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 03/01/2019) |
| 03/01/2019 | 147 | Exhibit List , filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) (Entered: 03/01/2019) |
| 03/01/2019 | 148 | Witness List , filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) (Entered: 03/01/2019) |
| 03/08/2019 | 149 | ORDER - Pursuant to the Order of this Court, Dkt. No. 144 , a Writ of Order of Habeas Corpus Ad Testificandum is necessary requiring the presence of Bruce Carneil Webster, before the Honorable William T. Lawrence for the Southern District of Indiana, at Indianapolis, Indiana, on April 1, 2019 at 9:00 a.m. in courtroom 202, and thereafter until excused. The Court ORDERS that the Clerk issue the proper writ or order to compel such attendance under safe conduct, as provided by law. (See Order.) Copy via U.S. Mail pursuant to distribution list. Signed by Judge William T. Lawrence on 3/8/2019. (DMW) (Entered: 03/08/2019) |
| 03/08/2019 | 150 | WRIT OF HABEAS CORPUS AD TESTIFICANDUM issued. You are hereby commanded to have the presence of Bruce Carneil Webster, now confined in the Terre Haute USP, in the custody of the Warden of said institution, before the United States District Court for the Southern District of Indiana, at Indianapolis, Indiana, on 4/1/2019 at 9:00 a.m. in courtroom 202. Paper copies to USM. (DMW) (Entered: 03/08/2019) |
| 03/08/2019 | 151 | OBJECTION *to Petitioner's Exhibits* by CHARLES LOCKETT. Related document: 147 Exhibit List filed by BRUCE CARNEIL WEBSTER.(Weimer, Jay) (Entered: 03/08/2019) |
| 03/08/2019 | 152 | Exhibit List *(First Amended)*, filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 03/08/2019) |
| 03/08/2019 | 153 | OBJECTION *to Respondent's First Amended Final Exhibit List* by BRUCE CARNEIL WEBSTER. Related document: 152 Exhibit List filed by CHARLES LOCKETT.(Johnson, Kathryn) (Entered: 03/08/2019) |
| 03/08/2019 | 154 | Exhibit List *First Amended Final*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) (Entered: 03/08/2019) |
| 03/08/2019 | 155 | STIPULATION *Regarding Authenticity and Admissibility of Documents*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) (Entered: 03/08/2019) |
| 03/15/2019 | 156 | RESPONSE *to Webster's Objections to Respondent's Exhibits*, re 153 Objection, filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 03/15/2019) |
| 03/15/2019 | 157 | RESPONSE *to Respondent's Objections to Petitioner's Exhibits*, re 151 Objection, filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, |

| | | |
|---|---|---|
| | | Kathryn) (Entered: 03/15/2019) |
| 03/22/2019 | 158 | MOTION *to Exclude Witnesses from the Courtroom Pursuant to Federal Rule of Evidence 615*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Foster, Monica) (Entered: 03/22/2019) |
| 03/25/2019 | 159 | NOTICE of Appearance by Michael Stephen Warbel on behalf of Respondent CHARLES LOCKETT. (Warbel, Michael) (Entered: 03/25/2019) |
| 03/25/2019 | 160 | ***Correct version filed at 166 *** MOTION *to Admit Deposition Testimony of Dr. Blessinger*, filed by Respondent CHARLES LOCKETT. (Weimer, Jay) Modified on 3/27/2019 to indicate filing was corrected and resubmitted (APD). (Entered: 03/25/2019) |
| 03/25/2019 | 161 | Exhibit List *(Second Amended)*, filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 03/25/2019) |
| 03/26/2019 | 162 | Amended NOTICE of Appearance by Michael Stephen Warbel on behalf of Respondent CHARLES LOCKETT. (Warbel, Michael) Modified on 3/27/2019 to edit document title(DMW). (Entered: 03/26/2019) |
| 03/26/2019 | 163 | RESPONSE in Opposition re 158 MOTION *to Exclude Witnesses from the Courtroom Pursuant to Federal Rule of Evidence 615* , filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 03/26/2019) |
| 03/26/2019 | 164 | Submission *of Deposition Transcripts and Notice of Manual Filing of Video Depositions*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Exhibit Exhibit 1-Designated Excerpts of the Deposition of Dr. Charles Spellman, # 2 Exhibit Exhibit 2-Designated Excerpts of the Deposition of Mr. Larry Moore)(Johnson, Kathryn) (Entered: 03/26/2019) |
| 03/26/2019 | 165 | Brief *(Petitioner's Pre-Hearing)* by BRUCE CARNEIL WEBSTER. (Foster, Monica) (Entered: 03/26/2019) |
| 03/26/2019 | 166 | MOTION *to Admit Deposition Testimony of Dr. Jacqueline Blessinger in Lieu of Live Testimony*, filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Exhibit Deposition - Blessinger, # 2 Exhibit Deposition - Signature page, # 3 Exhibit Deposition Ex. 9, # 4 Exhibit Deposition Ex. 10, # 5 Exhibit Deposition Ex. 11, # 6 Exhibit Deposition Ex. 12)(Weimer, Jay) (Entered: 03/26/2019) |
| 03/27/2019 | 167 | Exhibit List *(Third Amended)*, filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 03/27/2019) |
| 03/27/2019 | 168 | OBJECTION *to Witness Testimony Submitted through Depositions* by CHARLES LOCKETT. Related document: 164 Submission filed by BRUCE CARNEIL WEBSTER.(Magliolo, Joseph) (Entered: 03/27/2019) |
| 03/28/2019 | 169 | REPLY in Support of Motion re 158 MOTION *to Exclude Witnesses from the Courtroom Pursuant to Federal Rule of Evidence 615* , filed by Petitioner BRUCE CARNEIL WEBSTER. (Foster, Monica) (Entered: 03/28/2019) |
| | | |

| | | |
|---|---|---|
| 03/28/2019 | 170 | RESPONSE in Opposition re 166 MOTION *to Admit Deposition Testimony of Dr. Jacqueline Blessinger in Lieu of Live Testimony* , filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Affidavit Declaration of Kathryn A. Johnson, # 2 Exhibit 1 to Declaration, # 3 Exhibit 2 to Declaration, # 4 Exhibit 3 to Declaration, # 5 Exhibit 4 to Declaration, # 6 Exhibit 5 to Declaration, # 7 Exhibit 6 to Declaration)(Johnson, Kathryn) (Entered: 03/28/2019) |
| 03/28/2019 | 171 | MOTION *to Exclude Deposition Testimony of Dr. Charles Spellman Pursuant to Federal Rule of Civil Procedure 37*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Text of Proposed Order)(Johnson, Kathryn) (Entered: 03/28/2019) |
| 03/29/2019 | 172 | ENTRY ON WEBSTER'S MOTION TO EXCLUDE WITNESSES FROM THE COURTROOM PURSUANT TO FEDERAL RULE OF EVIDENCE 615 - Webster's Motion to Exclude Witnesses from the Courtroom Pursuant to Federal Rule of Evidence 615 (Dkt. No. 158 ) is DENIED. Dr. Robert Denney may be present in the Courtroom during the hearing. (See Entry.) Signed by Judge William T. Lawrence on 3/29/2019. (DMW) (Entered: 03/29/2019) |
| 03/29/2019 | 173 | ***PLEASE DISREGARD. WITHDRAWN AT 181 .***NOTICE *of manual filing*, filed by Petitioner BRUCE CARNEIL WEBSTER (Foster, Monica) Modified on 4/1/2019 (DMW). (Entered: 03/29/2019) |
| 03/29/2019 | 174 | MOTION to Withdraw *Document 173*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Attachments: # 1 Text of Proposed Order)(Foster, Monica) (Entered: 03/29/2019) |
| 03/29/2019 | 175 | ***PLEASE DISREGARD FILED IN ERROR***NOTICE *of manual filing*, filed by Petitioner BRUCE CARNEIL WEBSTER (Foster, Monica) Modified on 3/29/2019 (NAD). (Entered: 03/29/2019) |
| 03/29/2019 | 176 | NOTICE *of Manual Filing*, filed by Petitioner BRUCE CARNEIL WEBSTER (Foster, Monica) (Entered: 03/29/2019) |
| 03/29/2019 | 177 | Receipt of 1 USB Drive containing depositions. (LBT) (Entered: 03/29/2019) |
| 03/29/2019 | 178 | RESPONSE in Opposition re 171 MOTION *to Exclude Deposition Testimony of Dr. Charles Spellman Pursuant to Federal Rule of Civil Procedure 37* , filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Exhibit) (Magliolo, Joseph) (Entered: 03/29/2019) |
| 03/29/2019 | 179 | REPLY in Support of Motion re 166 MOTION *to Admit Deposition Testimony of Dr. Jacqueline Blessinger in Lieu of Live Testimony* , filed by Respondent CHARLES LOCKETT. (Attachments: # 1 Exhibit A - Email and FBI 302, # 2 Exhibit B - Email and CV)(Weimer, Jay) (Entered: 03/29/2019) |
| 03/30/2019 | 180 | Exhibit List *, Second Amended Final*, filed by Petitioner BRUCE CARNEIL WEBSTER. (Johnson, Kathryn) (Entered: 03/30/2019) |
| 04/01/2019 | 181 | ORDER ON MOTION TO WITHDRAW DOCUMENT 173 - Granting 174 Motion to Withdraw Document 173. Petitioner's Notice of Manual Filing shall |

| | | |
|---|---|---|
| | | be withdrawn. Signed by Judge William T. Lawrence on 4/1/2019. (DMW) (Entered: 04/01/2019) |
| 04/02/2019 | 182 | ENTRY FOR APRIL 1, 2019 - This cause was before the Court for a hearing to determine whether Petitioner Bruce Carneil Webster is intellectually disabled and thus categorically ineligible for the death penalty. The Petitioner appeared in person and by counsel Steven J. Wells, Kathryn A. Johnson, Kirsten E. Schubert, and Monica Foster. The Respondent appeared by counsel Jay S. Weimer, Michael S. Warbel, and Tami C. Parker. Petitioner began presenting his case. The following witnesses were sworn and examined: Dr. Marc J. Tass and Dr. Daniel J. Reschly. Petitioner's exhibit 40 was admitted into evidence without objection. (See Entry) (Court Reporter Cathy Jones.) (APD) (Entered: 04/02/2019) |
| 04/03/2019 | 183 | ENTRY FOR APRIL 2, 2019, DAY 2 - This cause was before the Court for a hearing to determine whether Petitioner Bruce Carneil Webster is intellectually disabled and thus categorically ineligible for the death penalty. The Petitioner appeared in person and by counsel Steven J. Wells, Kathryn A. Johnson, Kirsten E. Schubert, and Monica Foster. The Respondent appeared by counsel Jay S. Weimer, Michael S. Warbel, and Tami C. Parker. The parties continued their examination of Dr. Daniel J. Reschly. Petitioner and Respondent admitted exhibits by stipulation. (SEE ENTRY). (Court Reporter Cathy Jones.) (APD) (Entered: 04/03/2019) |
| 04/04/2019 | 184 | ENTRY FOR APRIL 3, 2019, DAY 3 - This cause was before the Court for a hearing to determine whether Petitioner Bruce Carneil Webster is intellectually disabled and thus categorically ineligible for the death penalty. The Petitioner appeared in person and by counsel Steven J. Wells, Kathryn A. Johnson, Kirsten E. Schubert, and Monica Foster. The Respondent appeared by counsel Jay S. Weimer, Michael S. Warbel, and Tami C. Parker. Dr. John M. Fabian was sworn and examined. The examination of Dr. Fabian concluded. The deposition of Larry Moore was offered and admitted without objection. Dr. Robert L. Denney was sworn and examined. (See Entry). (Court Reporter Cathy Jones.) (APD) (Entered: 04/04/2019) |
| 04/04/2019 | 185 | ENTRY FOR APRIL 4, 2019, DAY 4 - This cause was before the Court for a hearing to determine whether Petitioner Bruce Carneil Webster is intellectually disabled and thus categorically ineligible for the death penalty. The Petitioner appeared in person and by counsel Steven J. Wells, Kathryn A. Johnson, Kristen E. Schubert, and Monica Foster. The Respondent appeared by counsel Jay S. Weimer, Michael S. Warbel, and Tami C. Parker. The parties continued their examination of Dr. Robert L. Denney, who remained under oath. The examination of Dr. Robert L. Denney concluded. Dr. John M. Fabian, who remained under oath, was examined as a rebuttal witness. The examination of Dr. John M. Fabian concluded. The Court ordered the parties to include briefing on objections to exhibits in their post-hearing filings. (See Entry) (Court Reporter Cathy Jones.) (APD) (Entered: 04/04/2019) |
| 04/05/2019 | 186 | ENTRY FOR APRIL 5, 2019, DAY 5 - This cause was before the Court for a hearing to determine whether Petitioner Bruce Carneil Webster is |

|  |  |  |
|---|---|---|
|  |  | intellectually disabled and thus categorically ineligible for the death penalty. The Petitioner appeared in person and by counsel Steven J. Wells, Kathryn A. Johnson, Kirsten E. Schubert, and Monica Foster. The Respondent appeared by counsel Jay S. Weimer and Michael S. Warbel. The following witnesses were sworn and examined: Dr. Erin Conner; John S. Edwards, III; and Phil Woolston. Respondent's exhibits 169 and 171 were conditionally admitted over Petitioner's objection. The Court ordered briefing on the same in the parties' post-hearing briefs. The Court ordered the parties to submit Proposed Findings of Fact and Conclusions of Law no later than 30 days from the receipt of the transcript of this hearing. The Court advised the parties that no extensions of time should be anticipated. Court was adjourned. (SEE ENTRY) (Court Reporter Cathy Jones.) (APD) (Entered: 04/05/2019) |
| 04/10/2019 | 187 | NOTICE of Appearance by Florence Italia Patti on behalf of Petitioner BRUCE CARNEIL WEBSTER. (Patti, Florence) (Entered: 04/10/2019) |
| 04/25/2019 | 188 | NOTICE of FILING of OFFICIAL TRANSCRIPT of Hearing To Determine Intellectual Disability held before Judge William T. Lawrence on April 1 through 5, 2019 (Jones, Cathy) (Entered: 04/25/2019) |
| 04/25/2019 | 189 | TRANSCRIPT of Hearing To Determine Intellectual Disability held on April 1, 2019, before Judge William T. Lawrence. (229 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 5/16/2019. Release of Transcript Restriction set for 7/24/2019. (Jones, Cathy) Released on 7/24/2019 (SWM). (Entered: 04/25/2019) |
| 04/25/2019 | 190 | *** SEE DKT. NUMBER 200 FOR REDACTED TRANSCRIPT *** TRANSCRIPT of Hearing To Determine Intellectual Disability held on April 2, 2019, before Judge William T. Lawrence. (197 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 5/16/2019. Release of Transcript Restriction set for 7/24/2019. (Jones, Cathy) (SWM). Modified on 7/24/2019 (SWM). Modified on 7/25/2019 (SWM). (Entered: 04/25/2019) |
| 04/25/2019 | 191 | TRANSCRIPT of Hearing To Determine Intellectual Disability held on April 3, 2019, before Judge William T. Lawrence. (227 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 5/16/2019. Release of Transcript Restriction set for 7/24/2019. (Jones, Cathy) Released on 7/24/2019 (SWM). (Entered: 04/25/2019) |
| 04/25/2019 | 192 | TRANSCRIPT of Hearing To Determine Intellectual Disability held on April 4, 2019, before Judge William T. Lawrence. (190 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 5/16/2019. Release of Transcript Restriction set for |

| | | |
|---|---|---|
| | | 7/24/2019. (Jones, Cathy) Released on 7/24/2019 (SWM). (Entered: 04/25/2019) |
| 04/25/2019 | 193 | TRANSCRIPT of Hearing To Determine Intellectual Disability held on April 5, 2019, before Judge William T. Lawrence. (145 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). Please review Local Rule 80-2 for more information on redaction procedures. Redaction Statement due 5/16/2019. Release of Transcript Restriction set for 7/24/2019. (Jones, Cathy) Released on 7/24/2019 (SWM). (Entered: 04/25/2019) |
| 05/22/2019 | 194 | WRIT of Habeas Corpus Ad Testificandum Returned re Bruce Carneil Webster. (DMW) (Entered: 05/22/2019) |
| 05/24/2019 | 195 | Proposed Findings of Fact by CHARLES LOCKETT. (Weimer, Jay) (Entered: 05/24/2019) |
| 05/24/2019 | 196 | Findings of Fact & Conclusions of Law (proposed) by BRUCE CARNEIL WEBSTER. (Wells, Steven) (Entered: 05/24/2019) |
| 05/31/2019 | 197 | NOTICE *of Errata to Petitioner's [Proposed] Findings of Fact and Conclusions of Law*, filed by Petitioner BRUCE CARNEIL WEBSTER, re 196 Findings of Fact & Conclusions of Law (proposed). (Johnson, Kathryn) (Entered: 05/31/2019) |
| 06/18/2019 | 198 | ENTRY ON INTELLECTUAL DISABILITY - This cause is before the Court to determine whether Bruce Webster is entitled to relief under 28 U.S.C. § 2241. The Court finds that Webster has met his burden and shown by a preponderance of the evidence that he is intellectually disabled, as he meets all three prongs of intellectual disability: 1)Webster has intellectual-functioning deficits; 2) Webster has adaptive deficits; and 3) the onset of these deficits was while Webster was a minor. In making this ruling, the Court has carefully considered the totality of the evidence and weighed the testimony in accordance with its credibility assessment of each witness. Accordingly, Webster's petition for a writ of habeas corpus is GRANTED. Webster's death sentence is vacated under 28 U.S.C. § 2241. The Attorney General has 120 days from the Entry of Final Judgment to take appropriate action in light of the writ. Further sentencing proceedings shall occur in the Northern District of Texas. (See Entry.) Signed by Judge William T. Lawrence on 6/18/2019. (DMW) (Entered: 06/18/2019) |
| 06/18/2019 | 199 | JUDGMENT - The Court having this day directed the entry of final judgment, the Court now enters FINAL JUDGMENT in favor of the petitioner, Bruce Webster, and against the respondent. Webster's petition for a writ of habeas corpus is granted. Webster's death sentence is vacated under 28 U.S.C. § 2241. The Attorney General has 120 days from the Entry of Final Judgment to take appropriate action in light of the writ. Further sentencing proceedings shall occur in the Northern District of Texas. Signed by Judge William T. Lawrence on 6/18/2019. (DMW) (Entered: 06/18/2019) |
| 07/24/2019 | 200 | REDACTED Version of previously filed 190 TRANSCRIPT of Hearing to |

| | | |
|---|---|---|
| | | Determine Intellectual Disability held on April 2, 2019 before Judge William T. Lawrence. (197 pages.) Court Reporter/Transcriber: Cathy Jones (Telephone: (317) 922-9958). (Jones, Cathy) Released on 7/25/2019 (SWM). (Entered: 07/24/2019) |
| 08/13/2019 | 201 | MOTION for Extension of Time to to File Notice of Appeal , filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 08/13/2019) |
| 08/13/2019 | 202 | Unopposed MOTION for Extension of Time to to File Notice of Appeal , filed by Respondent CHARLES LOCKETT. (Weimer, Jay) (Entered: 08/13/2019) |
| 08/14/2019 | 203 | ORDER REASSIGNING CASE - Pursuant to 28 U.S.C. Section 137 and Local Rule 40-1(f), this matter has been reassigned from Judge William T. Lawrence to newly assigned Judge James Patrick Hanlon. Please include the new case number, 2:12-cv-00086-JPH-MJD on all future filings in this matter.Signed by Judge Jane Magnus-Stinson on 8/14/2019. (NLR) (Entered: 08/14/2019) |
| 08/16/2019 | 204 | ORDER GRANTING RESPONDENT'S MOTIONS TO EXTEND THE NOTICE-OF-APPEAL DEADLINE - Respondent's duplicative motions to extend the notice-of-appeal deadline, dkt. 201 , dkt. 202 , are GRANTED. The notice-of-appeal deadline is extended through September 3, 2019. Signed by Judge James Patrick Hanlon on 8/16/2019. (DMW) (Entered: 08/16/2019) |
| 08/30/2019 | 205 | NOTICE OF APPEAL as to 199 Closed Judgment, filed by Respondent CHARLES LOCKETT. (No fee paid with this filing) (Weimer, Jay) (Entered: 08/30/2019) |
| 08/30/2019 | 206 | DOCKETING STATEMENT by CHARLES LOCKETT re 205 Notice of Appeal (Weimer, Jay) (Entered: 08/30/2019) |
| 09/03/2019 | 207 | PARTIES' SHORT RECORD re 205 Notice of Appeal - **Instructions for Attorneys/Parties attached.** (LBT) (Entered: 09/03/2019) |

**Case #: 2:12-cv-00086-JPH-MJD**